2013 ND 118

**Allen DAVENPORT, Appellant**

v.

**WORKFORCE SAFETY AND INSURANCE FUND,**
**Appellee.**

**No. 20120449.**

Supreme Court of North Dakota.

July 18, 2013.

Steven L. Latham, Bismarck, N.D., for appellant.

Mitchell D. Armstrong, Bismarck, N.D., for appellee.

CROTHERS, Justice.

[¶ 1] Allen Davenport appeals from a judgment affirming a Workforce Safety and Insurance ("WSI") decision terminating benefits on his claim for treatment of his cervical spine and left shoulder and denying his claims for benefits for treatment of his anxiety and depression and lower back condition. He argues his anxiety and depression and his cervical spine, left shoulder and back conditions are "compensable injuries" under N.D.C.C. § 65–01–02(10). We conclude a reasoning mind reasonably could conclude Davenport failed to establish by a preponderance of the evidence that the September and December 2010 work incidents substantially accelerated the progression of, or substantially worsened the severity of, his existing conditions and that his physical injury caused at least 50 percent of his anxiety and depression. We affirm.

I

[¶ 2] Davenport's job as a truck driver for Food Services of America required him to load and unload 50 to 110 pound packages of meat and canned goods from his truck. On September 9, 2010, he incurred upper chest injuries and a fractured rib during the course of employment when the wind blew his truck door into him. At the time of the injury, Davenport was 51 years old and had been employed by Food Services for seven years. WSI accepted Davenport's claim for benefits for a "[c]ontusion of chest wall," and he received medical treatment from Dr. Anthony Johnson. Davenport returned to work with restrictions on September 27, 2010 and was released to return to work without restrictions on December 21, 2010.

[¶ 3] On December 24, 2010, Davenport was injured when he slipped and fell while pulling a ramp out of his truck during the course of employment, and he received treatment from Dr. Johnson. On December 28, 2010, Dr. Johnson reported "some upper and mid neck pain extending down into the shoulder through into the left hand area with some numbness [and] tingling." WSI accepted Davenport's claim for a sprain and strain to his left shoulder and upper arm and for a sprain and strain of his neck and cervical spine. After the December injury, Dr. Johnson restricted Davenport's work activity, and on February 8, 2011, Davenport began working at a modified position through Food Services.

[¶ 4] In February 2011, Davenport received treatment for anxiety and depression. Davenport claimed his supervisor's failure to fully accommodate his injury when he returned to work at the modified position caused him stress and required treatment for anxiety and depression. Davenport's medical records indicate he received treatment for anxiety and depression in 2004, relating to legal issues about custody of his wife's granddaughters, which was resolved in 2004. In February 2011, Dr. Thomas Thorson noted Davenport was self-conscious about his work restrictions and his employer was not sympathetic, and he diagnosed Davenport with anxiety and depression "secondary to work related injury and associated stressors." Dr. Johnson reported Davenport was "dealing with depression/stress that had developed in dealings" with his supervisor and opined "the depression [Davenport]

developed was definitely related to his work injuries and his inability to work." WSI denied Davenport's claim for treatment of his anxiety and depression.

[¶ 5] Dr. Johnson provided Davenport with continuing medical treatment in the ensuing months. An MRI of Davenport's neck showed "[n]eural foraminal stenosis at multiple levels, predominately worse on the left" and a "[f]ocal disc bulge in the left paramidline, worsening laterally at C3–4." Davenport was referred to Dr. Gregory Peterson for an electrodiagnostic study, which indicated "[m]ild, left greater than right, ulnar neuropathies" with "[m]ild underlying peripheral neuropathy." Dr. Peterson reported the "nature of the findings [did] not indicate a causal relationship to a specific injury" and there was "no indication that . . . Davenport [had] any cervical spine etiology for his arm symptoms." In March 2011, Davenport saw neurosurgeon Dr. Alan Van Norman, who reported Davenport's x-rays and MRI revealed "multilevel disk degeneration" and also indicated "ulnar neuropathy" and "cervical spondylosis." Dr. Van Norman reported Davenport had "mild neck discomfort for the last year, or so." Dr. Johnson also noted a neck problem dating back to 2001. Dr. Van Norman reported it was "probable—not certain" that Davenport had a preexisting condition contributing to his current condition and checked "probably" on a form in response to a WSI question whether Davenport's "work injury made the preexisting condition symptomatic but did not significantly worsen the condition." In April, Dr. Van Norman referred Davenport to a hand surgeon, Dr. Walker Wynkoop, for the tingling in Davenport's left arm. Dr. Wynkoop performed an anterior nerve transposition and a release from the cubital tunnel fascia on Davenport's left elbow in May 2011, and Dr. Wynkoop's notes state the surgery was to address nerve compression in Davenport's elbow.

WSI denied Davenport's claim for treatment of his left elbow and ulnar neuropathy, concluding those conditions were unrelated to his work injury.

[¶ 6] In April 2011, Davenport received medical treatment for his lower back. Davenport's medical records reflected he received treatment for his lower back in 2004 and in 2007. In 2004, he was treated for a muscle strain with no objective signs of injury other than tenderness in the paraspinal muscles. In 2007, he was treated for neck and shoulder pain and low back pain after his truck door slammed into him. An April 2007 MRI showed a narrowing of disc space between L4 and L5 and neuropathy spurring. WSI denied coverage for Davenport's medical treatment in 2007. WSI also denied Davenport's claim for medical treatment for his lower back in 2011, concluding no objective evidence established his lower back condition was caused by either 2010 work injury.

[¶ 7] In June 2011, Dr. Charles Burton performed an independent examination of Davenport and reported:

"There is no indication that any of Mr. Davenport's present complaints continue to have any relationship to a December 24, 2010 work incident, as described in this report. Mr. Davenport's chronic complaints of neck and back pain have reflected multilevel degenerative disc disease, made worse by Mr. Davenport's having been, and continuing to be, a chronic smoker. Mr. Davenport's left ulnar neuropathy does not appear to have any relationship to the December 24, 2010 work incident. While the December 24, 2010 work incident may very well have aggravated Mr. Davenport's quite significant multilevel cervical spondylosis, there was no objective evidence of injury, either neurologically or on im-

aging studies, and typically such an aggravation would have been temporary in nature and resolved with conservative therapy within a period of 8 to 12 weeks."

Dr. Burton's report recommended:

"It is well documented that individuals with multilevel degenerative spondylosis of the spine self-heal and self-stabilize their spines with appropriate conservative therapy if they are nonsmokers. Mr. Davenport's continued smoking has sped up the degenerative process to the point where his conservative therapy is of only short-term benefit. The most significant treatment need for Mr. Davenport is for him to become a nonsmoker and to have this certified by nicotine testing. Following this, it is my opinion that Mr. Davenport's chronic and long-standing clinical complaints of cervicogenic pain might be effectively then addressed by conservative care, such as medial branch injections and medial branch blocks."

[¶ 8] Dr. Van Norman reviewed Dr. Burton's report and agreed with Dr. Burton's conclusions. WSI terminated Davenport's benefits for treatment of his cervical spine and left shoulder injuries after July 14, 2011, concluding the objective medical evidence did not show his December 2010 injury was a substantial contributing factor to the condition of his cervical spine and left shoulder after that date.

[¶ 9] Davenport requested a hearing on all his claims, and an independent administrative law judge ("ALJ") was designated under N.D.C.C. § 65–02–22.1 to issue a final decision on those claims. After an evidentiary hearing, the ALJ issued a final order sustaining WSI's termination of benefits for Davenport's left shoulder and cervical spine injuries and WSI's denial of benefits for his anxiety and depression, his lower back condition and his left elbow

and ulnar neuropathy. The ALJ found a preponderance of the evidence established Davenport's current cervical spine and left shoulder conditions resulted from preexisting degenerative disc disease and not from his work injuries. The ALJ found the greater weight of the evidence established Davenport's December 2010 work injury neither substantially accelerated the progression of his degenerative disc disease nor substantially worsened its severity; that Davenport's conflict with his employer was the primary cause of his anxiety and depression and his physical work injury was not at least 50 percent of the cause of his anxiety and depression; and that Davenport failed to establish his bilateral cubital tunnel syndrome and ulnar neuropathy arose out of and in the course of his employment because neuropathy was present to some extent in all his extremities and was a degenerative condition not caused by an acute injury in September 2010, or in December 2010. The ALJ found Davenport had degenerative disc disease in his lower back and, although evidence established a decline in his capabilities after the December 2010 injury, the cause of the decline was not delineated. The ALJ determined Davenport failed to show a substantial acceleration or substantial worsening of his degenerative disc disease because no evidence established a physical or acute change in his degenerative disc disease and the cause for the decline in his abilities was not delineated. The district court affirmed the ALJ's final decision.

II

[¶ 10] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, courts exercise limited appellate review of a final order by an administrative agency. *Workforce Safety & Ins. v. Auck,* 2010 ND 126, ¶ 8, 785 N.W.2d 186. Under N.D.C.C.

§§ 28–32–46 and 28–32–49, the district court and this Court must affirm an order by an administrative agency unless:

"1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

■■■■ [¶ 11] In reviewing an ALJ's factual findings, a court may not make independent findings of fact or substitute its judgment for the ALJ's findings; rather, a court must "determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record." *Auck*, 2010 ND 126, ¶ 9, 785 N.W.2d 186. When reviewing an appeal from an independent ALJ's final order, "similar deference is given to the ALJ's factual findings" because the "ALJ [had] the opportunity to observe witnesses and the 'responsibility to assess the credibility of witnesses and resolve conflicts in the evidence.'" *Id.* (quotation omitted). Similar deference is not given to an independent ALJ's legal conclusions, however, and a court fully reviews an ALJ's legal conclusions on questions of law, including the interpretation of a statute. *Id.*

## III

[¶ 12] The issues here are whether Davenport incurred a "compensable injury" under N.D.C.C. § 65–01–02(10), which provides:

" 'Compensable injury' means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.

a. The term includes:

. . . .

(6) A mental or psychological condition caused by a physical injury, but only when the physical injury is determined with reasonable medical certainty to be at least fifty percent of the cause of the condition as compared with all other contributing causes combined, and only when the condition did not preexist the work injury.

b. The term does not include:

. . . .

(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity.

. . . .

(10) A mental injury arising from mental stimulus."

[¶ 13] "A claimant seeking workforce safety and insurance benefits has the burden of proving by a preponderance of the evidence that the claimant has suffered a compensable injury and is entitled to benefits." *Bergum v. Workforce Safety & Ins.*, 2009 ND 52, ¶ 11, 764 N.W.2d 178. *See* N.D.C.C. § 65–01–11. "To carry this burden, a claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury." *Bergum*, at ¶ 11. "Although it is not necessary to show that the employment was the sole cause of the injury, to establish a causal connection the claimant must demonstrate that his employment was a substantial contributing factor to the disease or injury." *Bruder v. Workforce Safety & Ins.*, 2009 ND 23, ¶ 8, 761 N.W.2d 588. A "compensable injury 'must be established by medical evidence supported by objective medical findings.'" *Bergum*, at ¶ 12 (quoting N.D.C.C. § 65–01–02(10)).

### IV

[¶ 14] Davenport argues his anxiety and depression are causally related to his work injuries under N.D.C.C. § 65–01–02(10)(a)(6), which defines a "compensable injury" to include "[a] mental or psychological condition caused by a physical injury, but only when the physical injury is determined with reasonable medical certainty to be at least fifty percent of the cause of the condition as compared with all other contributing causes combined." Davenport argues it is "clear that the [anxiety and depression] difficulties he was having with his work [were] related to his work injury and the difficulty he had performing modified duties as a result of the chronic pain he was suffering from his work injuries." Davenport claims his treatment for anxiety and depression for both his chronic pain and his difficulties

with his employer are directly related to his work injury. WSI counters the ALJ reasonably could conclude Davenport's anxiety and depression were not compensable because he failed to show his physical injury was at least 50 percent of the cause of his anxiety and depression.

[¶ 15] Both Dr. Anthony Johnson and Dr. Thomas Thorson treated Davenport for anxiety and depression in 2011. Dr. Thorson's notes stated Davenport was self-conscious about his work restrictions and his employer was not sympathetic to those restrictions. Davenport testified he began taking medication for anxiety and depression because his "situation with the pain and the work situation led to some depression." Davenport testified he drove 25 miles to go to work at his light duty job and his supervisor threatened to fire him if he did not show up for work. Davenport testified he could not drive after taking medication and had to sit in his car after work for three to four hours for the medication to wear off. Dr. Thorson diagnosed Davenport with "[a]nxiety and depression secondary to work related injury and associated stressors," and Dr. Johnson opined the "depression [Davenport] developed was definitely related to his work injuries and his inability to work." Dr. Johnson's notes stated Davenport's depression and stress developed in dealings with the supervisor, and Dr. Johnson estimated 75 to 90 percent of Davenport's anxiety and depression related to his work.

[¶ 16] The ALJ said Dr. Johnson's notes did not estimate the percentage of Davenport's anxiety and depression related to his physical injury itself or to the conflict with his employer and decided:

"The preponderance of the evidence shows that Mr. Davenport's depression and anxiety resulted both from the stress his supervisor put on him and his physical injury. However there is insuf-

ficient medical evidence to determine how much of each was attributable to the injury and how much is attributable to the stress from his relationship with his employer.

. . . .

"Notwithstanding Dr. Johnson's estimate that Mr. Davenport's work was the cause of 75 to 90% anxiety and depression, the greater weight of the evidence shows that it was the conflict with his employer that was the primary cause of his anxiety and depression and the preponderance of the evidence does not show that the physical work injury was at least 50% of the cause of Mr. Davenport's anxiety and depression. Therefore WSI's June 15, 2011, order denying Mr. Davenport benefits . . . for anxiety or depression must be affirmed."

[¶ 17] The legislature permits compensation for mental or psychological conditions "only when the physical injury is determined with reasonable medical certainty to be at least fifty percent of the cause of the condition as compared with all other contributing causes combined." N.D.C.C. § 65–01–02(10)(a)(6). A compensable injury does not include a "mental injury arising from mental stimulus." N.D.C.C. § 65–01–02(10)(b)(10). The plain language of those provisions requires a physical injury to be at least 50 percent of the cause of a mental or psychological condition and contemplates a comparative assessment of other causes contributing to a mental or psychological condition. That language authorizes benefits only when at least a 50 percent causal connection exists between the claimant's physical injury and mental or psychological condition and does not permit benefits for an indeterminate relationship between a claimant's work situation and the claimant's mental or psychological condition.

[¶ 18] Here, evidence establishes Davenport's relationship with his employer was a contributing cause of his anxiety and depression, but the ALJ found Davenport failed to establish with sufficient medical evidence that his physical work injury caused at least 50 percent of his anxiety and depression. Although Davenport claims his physical injury cannot be separated from his relationship with this employer for purposes of evaluating the cause of his anxiety and depression, this Court has recognized in other contexts that "speculation as to cause does not meet the [claimant's] burden of proving cause by a preponderance of the evidence." *Rush v. North Dakota Workers Comp. Bureau,* 2002 ND 129, ¶ 8, 649 N.W.2d 207. A claimant "is responsible for making a record to support his claim." *Aga v. Workforce Safety & Ins.,* 2006 ND 254, ¶ 17, 725 N.W.2d 204.

[¶ 19] Davenport essentially asks this Court to reweigh evidence about the causal connection between his anxiety and depression and his physical injury or other contributing causes. On this record and under our deferential standard of review, we conclude a reasoning mind reasonably could conclude that Davenport failed to establish his physical injury caused at least 50 percent of his anxiety and depression as compared with all other contributing causes and that the ALJ's factual findings were proven by the weight of the evidence from the entire record. We conclude the ALJ's findings denying Davenport's claim for coverage for treatment of his anxiety and depression are supported by a preponderance of the evidence and support the ALJ's conclusion. We affirm WSI's denial of Davenport's claim for benefits for treatment of his anxiety and depression.

V

[¶ 20] Davenport argues his cervical spine, left shoulder and lower back

problems are compensable injuries under N.D.C.C. § 65–01–02(10)(b)(7) and *Mickelson v. Workforce Safety & Ins.*, 2012 ND 164, 820 N.W.2d 333. He asserts that although he had preexisting degenerative spine and lower back conditions, his work injuries substantially aggravated or worsened his conditions to where he had to seek medical treatment and was unable to perform his regular work duties. He asserts his ongoing chronic pain condition was substantially caused by his work injuries.

[¶ 21] WSI responds the ALJ correctly decided Davenport's preexisting cervical spine, left shoulder and lower back conditions were not compensable. WSI asserts *Mickelson* involved significantly different facts and does not require reversal of the ALJ's decision because it involved a latent preexisting condition while Davenport had preexisting symptoms for his cervical spine and his lower back. WSI asserts that the ALJ correctly applied the law and that the ALJ's findings are supported by the weight of the evidence because Davenport had a preexisting condition in his lower back and cervical spine, which was hastened by years of smoking, and because he offered no medical evidence supported by objective medical findings to show compensability for a work injury.

[¶ 22] "[U]nder N.D.C.C. § 65–01–02(10)(b)(7), unless a claimant's employment 'substantially accelerates' the progression of, or 'substantially worsens' the severity of, a preexisting injury, disease, or other condition, it is not a 'compensable injury' when the claimant's employment merely acts to trigger symptoms in the preexisting injury, disease, or other condition." *Bergum*, 2009 ND 52, ¶ 12, 764 N.W.2d 178. In *Mickelson*, 2012 ND 164, ¶ 9, 820 N.W.2d 333, we considered the definition of a "compensable injury" involving a preexisting injury, disease, or other condition under N.D.C.C. § 65–01–02(10)(b)(7) in the context of a claimant's previously asymptomatic degenerative disc disease. In that case, the parties agreed the aggravation statute, N.D.C.C. § 65–01–15, did not apply to the claimant's latent degenerative disc disease because no evidence established he knew about his lower back condition before he operated a loader for his employer. *Mickelson*, at ¶ 10. Three medical providers attributed the claimant's pain to his work. *Id.* at ¶¶ 3–4. A subsequent MRI revealed "moderate to severe degenerative disk disease," and a WSI medical consultant's record review stated the claimant's "degenerative disc disease [was] not caused by his reported work injury." *Id.* at ¶¶ 3, 5. The medical consultant's report stated the claimant's work may have triggered symptoms associated with the disease but did not cause, substantially worsen or substantially accelerate the condition. *Id.* at ¶ 5. After an evidentiary hearing, an ALJ concluded the claimant's "employment triggered [Mickelson's] symptoms of degenerative disc disease, but there was no evidence his employment substantially accelerated the progression or substantially worsened the severity of the degenerative disc disease." *Id.* at ¶ 6.

[¶ 23] After the district court affirmed the ALJ's decision, this Court reversed and remanded for further proceedings. *Mickelson*, 2012 ND 164, ¶¶ 23, 28, 30, 820 N.W.2d 333. Two justices recognized pain can be a symptom of a preexisting injury, disease or other condition under N.D.C.C. § 65–01–02(10)(b)(7), but "employment can also substantially worsen the severity, or substantially accelerate the progression of a preexisting injury, disease, or other condition when employment acts as a substantial contributing factor to substantially increase a claimant's pain." *Mickelson*, at ¶ 20. Those justices said, "[E]mployment

substantially accelerates the progression or substantially worsens the severity of a preexisting injury, disease, or other condition when the underlying condition likely would not have progressed similarly in the absence of employment." *Id.* at ¶ 21. Those justices concluded a remand for proper application of N.D.C.C. § 65–01–02(10)(b)(7) was necessary because the ALJ's decision focused too narrowly on whether the claimant's degenerative disc disease itself had worsened. *Mickelson,* at ¶ 23. They explained that interpretation provided "additional clarification and explanation for delineating between noncompensability when employment triggers symptoms in a preexisting latent injury, disease, or other condition and compensability when employment substantially accelerates the progression or substantially worsens the severity of the preexisting injury, disease, or other condition." *Id.* at ¶ 21.

[¶ 24] One justice concurred specially with the conclusion pain could substantially aggravate or worsen the severity of an underlying degenerative disc disease and recognized that pain also could be only a symptom of the condition triggered by employment. *Id.* at ¶ 30 (VandeWalle, C.J., concurring specially). The special concurrence recognized a statutory and judicial failure "to distinguish those instances in which pain … substantially worsens the severity of the condition, from those instance in which … pain is only a symptom of the condition triggered by employment," which involved factual determinations requiring a remand. *Id.* Two dissenting justices concluded that "the ALJ reasonably could have found based on the evidence that [the claimant] failed to prove a compensable injury" and would have affirmed WSI's denial of benefits. *Id.* at ¶¶ 32–40.

[¶ 25] Under *Mickelson,* depending on the specific facts and circumstances and the medical evidence supported by objective medical findings, pain can be a substantially worsening of the severity or a substantial acceleration of the progression of a preexisting condition and pain also can be a symptom of the condition which is triggered by employment. *Id.* at ¶¶ 20–23, 30. Under *Mickelson,* however, pain alone does not establish a substantial acceleration or a substantial worsening of a preexisting condition for purposes of a compensable injury. *Id.* at ¶ 30. Rather, *Mickelson* does not eliminate the requirement that there must be medical evidence supported by objective medical findings for a compensable injury. *See* N.D.C.C. § 65–01–02(10). In *Mickelson,* there was medical evidence supported by objective medical findings from the claimant's treating providers which stated his latent condition was directly related to his employment. *Id.* at ¶¶ 3–4. On that record, a majority of this Court concluded to remand for further findings on whether the claimant's underlying injury, disease or other condition would likely not have progressed similarly in the absence of employment which would indicate the employment situation substantially accelerated the progression or substantially worsened the severity of the underlying later condition. *Id.* at ¶ 23.

[¶ 26] Here, unlike the latent condition in *Mickelson,* doctors' notes indicated Davenport had neck complaints going back to 2001 and lower back complaints going back to 2004. Evidence also established the pain from Davenport's existing degenerative conditions was hastened by his chronic smoking and was not caused by his work incidents. In response to WSI's request for information, Davenport's treating neurosurgeon, Dr. Alan Van Norman, indicated Davenport's work incident was "probably" a trigger rather than a substantial worsening of his cervical spine complaints. Dr. Burton conducted an independent ex-

amination and concluded Davenport's "chronic complaints of neck and back pain, . . . reflected the multilevel progressive degenerative disc disease [was] made worse" by his chronic smoking and not his work injury. Dr. Burton concluded no evidence established Davenport's complaints had any relationship to his December 2010 work injury. According to Dr. Burton, the primary cause of Davenport's pain was the degenerative process, made worse by smoking. Dr. Burton testified that a person who did not smoke and has degenerative disc disease would self heal but the spine of a smoker would not heal and would degenerate. Dr. Van Norman agreed with Dr. Burton's conclusions from the independent examination.

[¶ 27] The ALJ found:

"Considering the prior medical treatment and the findings of the 2007 MRI, it is apparent that Mr. Davenport had pre-existing degenerative disc disease [in his lower back]. (DDD). Other than the evidence that Mr. Davenport experienced a reduction in function, there is no objective evidence to show that either his September 9, 2010, or his December 24, 2010, work injuries substantially accelerated the progression of Mr. Davenport's DDD. Neither is there objective evidence to show that it substantially worsened the severity of the DDD. Though the evidence shows deterioration in his condition, there is no delineation as to which of his several conditions is the cause.

. . . .

"Here the preponderance of the evidence shows that Mr. Davenport's current cervical spine and left shoulder conditions are the result of pre-existing DDD and not the result of his work injuries. The greater weight of the evidence also shows that the December 24, 2010, work injury neither substantially accelerated the progress of the DDD nor substantially worsened its severity. Having failed to demonstrate by the preponderance of the evidence that he is entitled to continued benefits for his cervical spine or left shoulder work injuries, WSI's August 4, 2011, order terminating Mr. Davenport's benefits [for that claim] must be affirmed.

. . . .

"The preponderance of the evidence shows that Mr. Davenport has pre-existing DDD in his lower back and that is what is now causing his pain in his lower back. While the preponderance of the evidence also shows that before his fall on December 24, 2010, Mr. Davenport was able to return to work and do his regular duties, it also shows that after that fall he was not. Though there is evidence of the decline in his capabilities, I cannot discern which of his ongoing conditions is the culprit because the cause of the decline is not delineated. Moreover since the DDD condition preexisted the December 24, 2010, injury there must be a showing of a substantial acceleration or a substantial worsening in the condition itself, not just a decline in Mr. Davenport's abilities. Mr. Davenport has not met his burden of proof in that regard because there is no evidence of a physical or acute change in his DDD nor was the cause for the decline in his abilities delineated. Having failed to demonstrate by the preponderance of the evidence that his pre-existing DDD is not the cause of his new limitations or that the DDD was substantially accelerated or substantially worsened in its severity, WSI's June 29, 2011, order denying benefits for Mr. Davenport's lower back . . . must be affirmed."

[¶ 28] The ALJ's decision identifies Davenport's prior problems with his lower

back, left shoulder and cervical spine. Unlike the record in *Mickelson*, Davenport's treating physician's notes and Dr. Van Norman's agreement with Dr. Burton's independent medical examination support the ALJ's decision that medical evidence supported by objective medical findings does not establish a causal relationship between Davenport's work injuries and the pain from his degenerative condition. Dr. Burton's independent medical examination provides evidence Davenport's condition, including his pain symptoms, would have progressed similarly in the absence of the work injuries.

[¶ 29] A claimant has the burden to provide medical evidence supported by objective medical findings to show a compensable injury. *See* N.D.C.C. § 65–01–02(10). On this record and under our deferential standard of review, a reasoning mind could reasonably conclude Davenport failed to sustain that burden. We conclude a reasoning mind could reasonably conclude the ALJ's findings were proven by the weight of the evidence and support the ALJ's conclusions. We therefore sustain the ALJ's decision that Davenport failed to establish a compensable injury under N.D.C.C. § 65–01–02(10)(b)(7).

### VI

[¶ 30] We affirm the judgment.

[¶ 31] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.