2013 ND 186

**Ron KERSHAW, Appellee**

**v.**

**WORKFORCE SAFETY AND INSURANCE, Appellant.**

No. 20130131.

Supreme Court of North Dakota.

Oct. 22, 2013.

Dean J. Haas, Bismarck, ND, for appellee.

Douglas W. Gigler, Special Assistant Attorney General, Fargo, ND, for appellant.

CROTHERS, Justice.

[¶ 1] Workforce Safety and Insurance ("WSI") appeals from a district court's judgment reversing an administrative law judge's ("ALJ") order, which affirmed WSI's order denying Ronald Kershaw's work injury claim. We conclude the district court erred in reversing the administrative law judge's order. We reverse and reinstate the ALJ's decision.

I

[¶ 2] Kershaw started working on the plow line assembly at the Bismarck Bobcat plant in 1975. He soon switched to welding and continued in that capacity until the Bismarck plant closed on December 31, 2009. Kershaw started working on the cab assembly line at the Gwinner Bobcat plant on March 14, 2010. His duties included using support carts to retrieve cabs from the conveyor line and using a hoist to push the cabs back into position on the conveyor line. Kershaw reported that instead of properly adjusting the height of the cart to work on the lower cab when he got behind, he squatted to perform his duties and that he first noticed pressure in his groin while squatting. Kershaw worked on the cab assembly line until roughly June 2010, when he obtained a welder position on the track line.

[¶ 3] Dr. Paul Jondahl saw Kershaw on October 31, 2010 for a routine blood pressure check. Kershaw complained of groin pain, which he thought might be from drinking Mountain Dew. Dr. Jondahl diagnosed him with a probable right inguinal hernia. Kershaw submitted a first report

of injury form to WSI on November 15, 2010. He did not claim a specific injury caused his hernia but listed March 29, 2010 as the injury date. WSI denied Kershaw's claim on December 13, 2010, finding he failed to prove his hernia was a compensable injury.

[¶ 4] Kershaw saw Dr. Jondahl on April 22, 2011, and Dr. Jondahl noted that unlike his previous appointment, Kershaw was there specifically because of a pending WSI claim. Kershaw complained of pain when he went to the bathroom and when he did certain lifting, but did not believe he needed to be restricted at work. Dr. Jondahl referred Kershaw to a surgeon.

[¶ 5] Dr. Derek Kane performed a surgical consult on May 11, 2011. Kershaw told Dr. Kane he first noticed pressure in his right groin in March 2010 and the pressure worsened when lifting heavy objects. Dr. Kane diagnosed a hernia and recommended surgical repair. Dr. Kane also recommended Kershaw not lift more than fifteen pounds. Dr. Kane repaired Kershaw's hernia on June 17, 2011.

[¶ 6] Kershaw asked Dr. Jondahl prior to his surgery to provide an opinion whether his hernia was work-related. Dr. Jondahl responded with a letter on May 23, 2011 that he believed Kershaw's employment likely significantly contributed to the hernia's development, substantially accelerated the hernia's progression and aggravated the hernia's severity.

[¶ 7] The ALJ affirmed WSI's denial of benefits on October 6, 2011, finding no objective medical evidence supported Dr. Jondahl's opinion. Kershaw sought and was granted a reconsideration after arguing that the ALJ substituted her own medical judgment and that she should consider the surgical report of Dr. Kane. WSI obtained an independent medical record review from Dr. Merlin Brown on reconsideration. Dr. Brown opined no evidence connected Kershaw's hernia to his work because no specific activity or injury precipitating the hernia existed and because Kershaw has other significant risk factors including smoking and obesity. The ALJ found that even absent Dr. Brown's opinion, Kershaw failed to establish that his work activities substantially contributed to or worsened his hernia, rather than simply triggering his symptoms. The ALJ affirmed WSI's denial of workers' compensation benefits on reconsideration.

[¶ 8] Kershaw appealed to the district court. The district court reversed the ALJ's decision and adopted Kershaw's proposed memorandum opinion, finding Kershaw presented a prima facie case of compensability and WSI misapplied N.D.C.C. § 65–05–08.3.

## II

[¶ 9] This Court reviews the decision of WSI rather than the district court. *Zander v. Workforce Safety and Ins.*, 2003 ND 194, ¶ 6, 672 N.W.2d 668. Sections 28–32–46 and 28–32–49, N.D.C.C., require this Court to affirm an order by an administrative agency unless:

"1.  The order is not in accordance with the law.

2.  The order is in violation of the constitutional rights of the appellant.

3.  The provisions of this chapter have not been complied with in the proceedings before the agency.

4.  The rules or procedure of the agency have not afforded the appellant a fair hearing.

5.  The findings of fact made by the agency are not supported by a preponderance of the evidence.

6.  The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge."

N.D.C.C. § 28–32–46.

[¶ 10] Courts exercise limited appellate review of administrative agency decisions. *Davenport v. Workforce Safety and Ins. Fund,* 2013 ND 118, ¶ 10, 833 N.W.2d 500. "In reviewing [whether] an ALJ's factual findings [are supported by a preponderance of the evidence], a court may not make independent findings of fact or substitute its judgment for the ALJ's findings; rather, a court must 'determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record.' " *Id.* at ¶ 11 (quotation omitted). This Court uses a deferential standard to evaluate an ALJ's factual findings because ALJs have the opportunity to observe witnesses, assess credibility of witnesses and resolve evidentiary conflicts. *Id.* "Recognizing the constitutional doctrine of separation of powers, our standard of review in cases such as this does not allow us to make independent findings of fact or to substitute our judgment for that of the agency fact finder." *Makedonsky v. N.D. Dept. of Human Servs.,* 2008 ND 49, ¶ 16, 746 N.W.2d 185 (quoting *Linser v. Office of Attorney General,* 2003 ND 195, ¶ 13, 672 N.W.2d 643).

### III

[¶ 11] WSI claims the ALJ reasonably could have determined based on the weight of the evidence Kershaw failed to show that he suffered a compensable injury, that his activities were a substantial contributing factor to the development of his hernia and that his employment substantially accelerated the progression of, or substantially worsened the severity of, his hernia.

[¶ 12] "A claimant seeking workforce safety and insurance benefits has the burden of proving by a preponderance of the evidence that [he] suffered a compensable injury and is entitled to benefits." *Davenport,* 2013 ND 118, ¶ 13, 833 N.W.2d 500 (quoting *Bergum v. Workforce Safety & Ins.,* 2009 ND 52, ¶ 11, 764 N.W.2d 178). "To carry this burden, a claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury." *Davenport,* at ¶ 13 (quoting *Bergum,* at ¶ 11). "Although it is not necessary to show that the employment was the sole cause of the injury, to establish a causal connection the claimant must demonstrate that his employment was a substantial contributing factor to the disease or injury." *Davenport,* at ¶ 13 (quoting *Bruder v. Workforce Safety & Ins.,* 2009 ND 23, ¶ 8, 761 N.W.2d 588).

[¶ 13] Section 65–01–02(10), N.D.C.C., defines " '[c]ompensable injury' [as] an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." "[O]bjective medical evidence may include a physician's medical opinion based on an examination, a patient's medical history, and the physician's education and experience." *Swenson v. Workforce Safety & Ins. Fund,* 2007 ND 149, ¶ 25, 738 N.W.2d 892. A compensable injury does not include "[i]njuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a

trigger to produce symptoms in the preexisting injury, disease, or other condition[,] unless the employment substantially accelerates its progression or substantially worsens its severity." N.D.C.C. § 65–01–02(10)(b)(7). It is the ALJ's duty to weigh evidence and resolve conflicting medical opinions in making its findings. *Thompson v. Workforce Safety and Ins.*, 2006 ND 69, ¶ 11, 712 N.W.2d 309.

[¶ 14] Here, the ALJ examined the record, weighed conflicting medical opinions and found no specific incident occurred resulting in Kershaw's injury. The ALJ found Kershaw did not relate his symptoms to work activities when he told Dr. Jondahl he was experiencing pressure in his groin. The ALJ also found Kershaw did not present objective medical findings to support Dr. Jondahl's opinion that Kershaw's repetitive work activities caused or accelerated the progression of, or substantially worsened the severity of, his hernia. The ALJ considered Kershaw's activities in light of his testimony regarding the incidence of his hernia and determined Kershaw did not suffer a compensable injury.

[¶ 15] The ALJ reconsidered the case at Kershaw's request. Kershaw supplemented the record with Dr. Kane's surgical report and again relied on Dr. Jondahl's letter written in response to a request to provide an opinion whether Kershaw's hernia was work-related. Dr. Jondahl stated in the letter with little context that he believed Kershaw's employment was likely a significant contributing factor to the development of the hernia and also was a factor substantially accelerating the progression of and aggravating the severity of the hernia. The ALJ was persuaded that Dr. Jondahl's letter did not provide objective medical findings to support his opinions.

The ALJ also found that Dr. Jondahl's opinion letter used language strikingly similar to that used in the attorney's request letter to him, calling into question the amount of thought Dr. Jondahl put into his opinion letter. While the ALJ recognized Kershaw performed physical activities as part of his job that could trigger symptoms, the ALJ found a triggering symptom does not "itself support a finding of causation, significant contribution to the development of, substantial acceleration of the progression of, or substantial worsening of the severity of, Kershaw's right inguinal hernia."

[¶ 16] Dr. Brown gave his opinion in response to WSI's request for an independent medical records review and as part of the ALJ's reconsideration. Dr. Brown recognized hernias have varying causes, including congenital defects, heavy lifting, smoking and obesity. He attached specific relevance to the smoking and obesity factors because Kershaw smoked and was obese. He further opined that although heavy lifting can cause hernias, the record did not show a specific event caused or worsened the hernia. Dr. Brown testified he could not conclude Kershaw's employment was anything more than an activity possibly triggering symptoms, rather than an activity causing the hernia. Dr. Brown did not find Kershaw's employment accelerated the progression of or worsened the severity of his hernia.

[¶ 17] The ALJ weighed the testimony and evidence on reconsideration and ultimately gave more weight to Dr. Brown's opinion. The ALJ "has the responsibility to weigh and resolve conflicting medical opinions." *Thompson*, 2006 ND 69, ¶ 11, 712 N.W.2d 309. When there is a conflicting medical opinion, the ALJ must resolve the conflicting opinion by considering the nature and length of the treatment relationship, the amount of evidence in support

of the opinion and how consistent the opinion is with the record as a whole, among other factors. N.D.C.C. § 65–05–08.3. The ALJ found that Kershaw did not clearly develop the record regarding Dr. Jondahl's opinion and that Kershaw and Dr. Jondahl did not discuss Kershaw's work activities close in time to the onset of symptoms. As such, the ALJ did not find Dr. Jondahl's opinion was based in sufficient objective medical findings, and she found Dr. Jondahl's opinion to be conclusory and an acquiescence to Kershaw's request for Dr. Jondahl's opinion.

[¶ 18] The ALJ found Dr. Brown's opinion more persuasive because it contained details that, when read in concert with the rest of the record, demonstrated Kershaw's employment was neither the cause of his hernia, nor a substantial contributing factor. The ALJ did not solely rely on Dr. Brown, however, and found that even ignoring Dr. Brown's opinion, Kershaw failed to establish by the greater weight of the evidence his work activities substantially contributed to the development of his hernia, substantially worsened the severity of his hernia or accelerated the progression of his hernia.

[¶ 19] Our review of an ALJ is limited to "whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence in the record." *Davenport*, 2013 ND 118, ¶ 11, 833 N.W.2d 500 (quotation omitted). Evidence supports the ALJ's findings that Kershaw's employment was neither the cause of his hernia, nor a substantial contributing factor. A reasoning mind reasonably could conclude, as the ALJ did, that Kershaw failed to show his work activities substantially contributed to the development of his hernia and failed to show his employment substantially accelerated the progression of his hernia or substantially worsened the severity of his hernia.

IV

[¶ 20] We conclude a reasoning mind reasonably could have determined the ALJ's factual conclusions were proven by the weight of the evidence. We reverse the district court judgment and reinstate the ALJ's decision.

[¶ 21] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.