2014 ND 93

**Roger FRITH, Appellant**

v.

**NORTH DAKOTA WORKFORCE SAFETY AND INSURANCE, Appellee**

**and**

**DMI Industries, Inc., Respondent.**

No. 20130240.

Supreme Court of North Dakota.

May 2, 2014.

Rehearing Denied June 26, 2014.

Roger Frith, self-represented, Fargo, N.D., appellant.

Jacqueline S. Anderson, Fargo, N.D., for appellee.

SANDSTROM, Justice.

[¶ 1]   Roger Frith appeals from a district court judgment affirming an order of

Workforce Safety and Insurance ("WSI") denying him medical benefits. We affirm, concluding a reasoning mind could have reasonably concluded Frith failed to show his work activities substantially accelerated the progression or substantially worsened the severity of a preexisting condition.

I

[¶ 2] In September 2010, Frith filed a claim for a work injury with WSI. He alleged that on August 18th or 19th he hurt his back at work while lifting and moving a large desk backwards up some stairs. Frith was working for DMI Industries. In June 2011, WSI denied Frith's claim for benefits, concluding he had not proven that his condition was causally related to a work injury or that his work activities substantially accelerated the progression or substantially worsened the severity of his preexisting spine condition. WSI found the medical records reflected a pre-existing condition which exhibited symptoms well before Frith alleged he injured his back at work.

[¶ 3] Frith requested a hearing. Greg Peterson, M.D., a physician specializing in physical medicine and rehabilitation, testified at the hearing that Frith's disk bulge in his spine in 2009 and 2010 was the manifestation of a degenerative condition. Dr. Peterson testified he did not believe Frith's preexisting condition was caused by work. In answering why he concluded Frith's preexisting condition was not substantially accelerated or worsened by Frith's work injury and general work at DMI, Dr. Peterson testified that, among other things, there is evidence Frith had substantial back pain radiating into his right hip and leg prior to beginning work at DMI.

[¶ 4] According to medical records, in March 2007 Frith went to the emergency room complaining of back pain. Troy Schaff, M.D., reported, "[Frith] states approximately a month ago after doing some heavy lifting, moving carpeting rolls, he had the onset of pain in his lower back. [Frith] states that 2 days later he slipped and fell on some ice, landing primarily on his left lower mid back region.... He states that he has had persistent pain since that time." Dr. Schaff noted Frith had x-rays of his lower spine, which showed good alignment without evidence of fracture, dislocation, or other acute-appearing abnormality. After a few sessions of physical therapy, Frith's physical therapist stated that Frith reported his pain was much improved and that he had only mild intermittent pain. The record shows Frith began working at DMI Industries a few months later, around July 2007.

[¶ 5] After an annual exam in January 2009, Eunah Fischer, M.D., reported Frith has had "intermittent low back pain, not as severe as back in 2005, but [occasionally associated] with numbness in left lower leg." An MRI was completed on February 1, 2009. Jason Asheim, M.D., stated, "There is mild degenerative disc and facet disease. Findings are most significant at L4–L5 where a small ... disc protrusion is abutting the ... L5 nerve root in the lateral recess[.]" Dr. Fischer wrote a letter to Frith explaining that the MRI revealed he has "minor arthritis in all of [his] lumbar discs, and it is most noticeable at the L4–L5 level. At this level, the disc is protruding slightly, however there is no significant disc herniation."

[¶ 6] On August 13, 2010, Frith saw Dr. Fischer again for questions regarding his "chronic low back pain." Dr. Fischer reported, "[Frith] is frustrated that he

never feels completely well. More recently, he feels that he's had an exacerbation of his symptoms in his right lower extremity." Another MRI was performed on August 17, 2010. Steven Mitchell, M.D., reported, "There are degenerative changes particularly at L4–5 on the right as is evident on the earlier study." Frith's alleged injury at DMI occurred a day or two later, August 18 or 19, 2010.

[¶ 7] After the evidentiary hearing, the administrative law judge ("ALJ") affirmed WSI's order denying benefits, finding:

1. On or about August 18, 2010, Frith injured his back while moving a piece of desk furniture at DMI.

2. The greater weight of the evidence showed that Frith had a preexisting lumbar spine condition at the time of the injury.

3. The greater weight of the evidence showed that Frith's symptoms before and after the work injury were substantially similar, indicating no significant change in the underlying degenerative condition.

4. The greater weight of the evidence showed the injury triggered symptoms in the underlying condition, but did not substantially accelerate the progression or substantially worsen the severity of the preexisting condition.

[¶ 8] The district court affirmed the ALJ's decision.

[¶ 9] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06, 65–10–01, and 28–32–42. Frith's appeal was timely under N.D.R.App.P. 4(a) and N.D.C.C. § 28–32–49. This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. § 28–32–49.

## II

[¶ 10] This Court's standard of review for WSI and other administrative agency decisions is well-established:

[W]e do not make independent findings of fact or substitute our judgment for that of the agency. We determine only whether a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record. In so doing we conclude that we are not exercising a nonjudicial function as prohibited by Section 94 of the North Dakota Constitution, nor are we violating any separation-of-powers doctrine inherent in the North Dakota Constitution.

*Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220–21 (N.D.1979).

## III

[¶ 11] Frith initially argues, "Could A reasonable person with A reasoning mind conclude that Frith proved that his work injury is compensable?" Frith misstates the standard of review. The question on appeal is not whether a reasoning mind could conclude Frith proved his work injury is compensable, but instead whether a reasoning mind could have determined WSI's findings were proven by the weight of the evidence. *See id.*

[¶ 12] Section 65–01–02(10), N.D.C.C., defines compensable injury as "an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." " '[O]bjective medical evidence may include a physician's medical opinion based on an examination, a patient's medical history,

and the physician's education and experience.'" *Kershaw v. WSI*, 2013 ND 186, ¶ 13, 838 N.W.2d 429 (quoting *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 25, 738 N.W.2d 892). "A compensable injury does not include '[i]njuries attributable to a preexisting injury, ... including when the employment acts as a trigger to produce symptoms in the preexisting injury, ... unless the employment substantially accelerates its progression or substantially worsens its severity.'" *Kershaw*, at ¶ 13 (quoting N.D.C.C. § 65–01–02(10)(b)(7)). "It is the ALJ's duty to weigh evidence and resolve conflicting medical opinions in making its findings." *Id.*

[¶ 13] In this case, the ALJ examined the record, weighed conflicting medical opinions, and made the following findings:

1. On or about August 18, 2010, Frith injured his back while moving a piece of desk furniture at DMI.

2. The greater weight of the evidence showed that Frith had a preexisting lumbar spine condition at the time of the injury.

3. The greater weight of the evidence showed that Frith's symptoms before and after the work injury were substantially similar, indicating no significant change in the underlying degenerative condition.

4. The greater weight of the evidence showed the injury triggered symptoms in the underlying condition, but did not substantially accelerate the progression or substantially worsen the severity of the preexisting condition.

[¶ 14] The ALJ's findings are supported by the evidence. Dr. Peterson testified at the administrative hearing that Frith's disk bulge in his spine in 2009 and 2010 was the manifestation of a degenerative condition. Dr. Peterson testified he does not believe Frith's preexisting condition was caused by work. In answering why he concluded Frith's preexisting condition was not substantially accelerated or worsened by his work injury and general work at DMI, Dr. Peterson testified that evidence showed Frith had substantial back pain radiating into his right hip and leg prior to beginning work at DMI and that when he had back pain in August 2010, it was substantially similar to prior times, including the time before he started working. Although Frith's treating physician, Dr. Fillmore, gave a contradictory opinion, Dr. Peterson testified he does not agree with Dr. Fillmore's opinion because "[h]e doesn't provide any evidence or reasoning to support an opinion that there was no preexisting condition. In fact, the information that he had is directly contrary to that. It doesn't resolve that discrepancy."

[¶ 15] In addressing the conflicting medical opinions, the ALJ found:

WSI asked Dr. Fillmore whether he agreed with Dr. Peterson that a) Frith had a preexisting lumbar spine condition at the time of his alleged work injury, and b) there was no evidence the work injury worsened his preexisting condition. Dr. Fillmore responded that he had no opinion on the matter and suggested WSI ask Dr. Fischer, a clear sign that he had abandoned his earlier opinion [that the work injury significantly accelerated the preexisting condition], or at least was not prepared to defend it.

[¶ 16] "It is the ALJ's duty to weigh evidence and resolve conflicting medical opinions in making its findings." *Kershaw*, 2013 ND 186, ¶ 13, 838 N.W.2d 429.

The record demonstrates a reasoning mind reasonably could conclude, as the ALJ did, that Frith failed to show his work activities substantially accelerated the progression or substantially worsened the severity of a preexisting condition.

[¶ 17] Frith makes a number of other arguments attacking the ALJ's weighing and interpretation of the evidence. Because we have already determined a reasoning mind reasonably could conclude that Frith failed to show his work activities substantially worsened a preexisting condition, it is unnecessary to individually address these additional claims.

IV

[¶ 18] Frith claims the ALJ improperly failed to consider work restrictions issued by his doctor. He argues, "There is no evidence that the ALJ considered either of these work restrictions in his Opinion. The work restrictions are useful in determining Cause of my spinal condition."

[¶ 19] This Court has discussed the elements which are required in a worker's compensation administrative order:

It is the organization's responsibility to weigh the credibility of conflicting medical evidence. In so doing, the organization must consider the entire record, clarify inconsistencies, and adequately explain its reasons for disregarding medical evidence favorable to the claimant.

The ALJ in this case issued lengthy findings of fact setting out the various conflicting medical opinions and explained in detail her reasons for accepting Dr. Simonet's and Dr. Kilzer's opinions over the opinions supporting Barnes's claim. While we may not have reached the same result had we been the initial finder of fact, we exercise restraint in reviewing the organization's findings of fact and resolution of conflicting evidence, and we do not make independent findings or substitute our judgment for that of the organization.

*Barnes v. Workforce Safety & Ins.*, 2003 ND 141, ¶¶ 20–21, 668 N.W.2d 290 (citations omitted).

[¶ 20] The ALJ in this case gave a detailed summary of the evidence followed by a detailed discussion about the law and its application to the facts. The ALJ then entered separate findings of fact and conclusions of law. We conclude the order adequately explained the reasons for the ALJ's decision and was not deficient in omitting Frith's work restrictions.

V

[¶ 21] Frith argues his former employer, DMI, failed to comply with N.D.C.C. § 65–05–01.4, which requires an employer to file a first report of notice of injury. Frith appears to argue that DMI should be responsible for his damages because DMI failed to file a first report under that section, which provides:

The employer shall file a first report of notice of injury with the organization within seven days from the date the employer receives the notice of injury from the employee. Failure of the employer to file a first report of notice of injury is an admission by the employer that the alleged injury may be compensable. The organization may make or reopen a determination made without an employer's first report of notice of injury on its own motion pursuant to section 65–05–04 on the grounds determined by the organization to be sufficient.

[¶ 22] Frith asks for damages "for DMI's breach of title 65 on authority of

N.D.C.C. § 65–01–08 'failure to comply.'" In support of this claim, Frith relies on two cases from the 1920s for the proposition that when an employer has failed to comply with the Worker's Compensation Act, the employer is liable for damages without regard to fault. *See Fahler v. City of Minot,* 49 N.D. 960, 194 N.W. 695 (1923); *State ex rel. Dushek v. Watland,* 51 N.D. 710, 201 N.W. 680 (1924). Frith's interpretation of the caselaw, however, is misplaced. Although this Court in *Fahler* concluded employers can be liable for injuries sustained, the noncompliance in that case concerned an employer's failure to pay annual premiums into the workmen's compensation fund. *See Fahler,* 49 N.D. at 975–76, 194 N.W. at 699 ("We cannot discover within the four corners of the act any indication that the Legislature intended that the employer, by defaulting in his premium obligation, should be permitted to defeat the substantial right of compensation for an injury arising in the course of employment."); *see also Watland,* 51 N.D. 710, 201 N.W. 680 (1924) (where employer has complied with act, and paid required premiums, he is relieved of liability and employee is entitled to compensation out of Workmen's Compensation Fund). Because Frith does not allege DMI has failed to pay premiums to the compensation fund, we conclude this case is distinguishable from *Fahler* and *Watland* and they do not apply.

[¶ 23] Frith has not provided, and we are unaware of, any authority stating that an employer's failure to file a first report of notice of injury under N.D.C.C. § 65–05–01.4 results in a loss of that employer's right to assert the exclusive remedy of worker's compensation. We conclude the ALJ did not err in this regard.

## VI

[¶ 24] Frith argues WSI violated the "Patient Protection and Affordable Care Act," section 1201, by denying him access to benefits. Section 1201 of the Affordable Care Act amends section 2704 of the Public Health Service Act to read, "A group health plan and a health insurance issuer offering group or individual health insurance coverage may not impose any preexisting condition exclusion with respect to such plan or coverage." Although he states that worker's compensation "is not technically 'insurance,'" he claims that under the recent federal Affordable Care Act, Public Law 111–148, North Dakota's worker's compensation laws cannot deny coverage on the basis of a preexisting condition.

[¶ 25] Issues are not adequately briefed when an appealing party fails to cite any supporting authority, and we will not consider them. *Aaland v. Lake Region Grain Cooperative,* 511 N.W.2d 244, 247 (N.D.1994). Frith has cited no authority in support of his claim and has admitted that worker's comp is not "technically" insurance. We reject Frith's unsupported claim.

## VII

[¶ 26] Frith argues the ALJ did not properly consider all of the issues stated in his specification of issues. Specifically, he argues the ALJ did not consider Specification of Issue # 2, which states, "Whether WSI correctly determined Roger Frith did not prove his work activities substantially accelerated the progression or substantially worsened the severity of his lumbar spine condition."

[¶ 27] In his order denying benefits, the ALJ stated:

Dr. Peterson explained that Frith's alleged work injury did not substantially worsen or accelerate his preexisting con-

dition by specific reference to the medical records, which showed Frith's symptoms before and after the work injury were substantially the same. When Frith sought treatment in March and April 2007, August 2010, and September 2010, the symptoms he reported were essentially the same: right-sided low back pain, extending into his lower extremity. Frith's medical records, as well as his testimony at the hearing, established a pattern of various work-related and nonwork-related activities, triggering similar symptoms in his underlying condition, which resolved in time with treatment.

. . . .

3. The greater weight of the evidence showed that Frith's symptoms before and after the work injury were substantially similar, indicating no significant change in the underlying degenerative condition.

4. The greater weight of the evidence showed the injury triggered symptoms in the underlying condition, but did not substantially accelerate the progression or substantially worsen the severity of the preexisting condition.

[¶ 28] We conclude the ALJ properly considered this issue.

## VIII

■ [¶ 29] Frith argues the district court did not provide him with a fair hearing. Under this argument Frith specifies a number of errors, including, in part: the district court denied his motion to expand the record; the hearing before the district court was too short; he was improperly served a response to his motion to expand the record three minutes before the district court judge entered the courtroom; and, the court reporter did not certify his transcripts filed with the Supreme Court as true and correct.

■ [¶ 30] "In order to comport with due process, a fair hearing requires reasonable notice or opportunity to know of the claims of opposing parties, along with the opportunity to rebut those claims. Due process also requires a fair hearing, which prevents defects in the hearing process that might lead to a denial of justice." *Holbach v. Dixon*, 2007 ND 60, ¶ 7, 730 N.W.2d 613 (citations and quotation marks omitted). With regard to an application to offer additional or excluded evidence, N.D.C.C. § 28–32–45 provides, in part:

> If an application for leave to offer additional testimony, written statements, documents, exhibits, or other evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that the additional evidence is relevant and material and that there were reasonable grounds for the failure to offer the evidence in the hearing or proceeding, or that the evidence is relevant and material to the issues involved and was rejected or excluded by the agency, the court may order that the additional evidence be taken, heard, and considered by the agency on terms and conditions as the court may deem proper.

"Section 28–32–45, N.D.C.C., allows a motion to supplement the record, but the district court does not consider the additional evidence and may only remand to the agency for the agency to consider the evidence." *Stenvold v. Workforce Safety & Ins.*, 2006 ND 197, ¶ 10, 722 N.W.2d 365.

[¶ 31] Frith claims his motion to expand the record was improperly denied

and he was improperly served a response to his motion to expand the record three minutes before the judge entered the courtroom. As with some of his previous claims, Frith has failed to provide sufficient explanation and authority for this Court to fully consider his arguments. On the basis of the record and Frith's conclusory allegations, we cannot say the district court deprived Frith of due process in denying his motion or serving a response to the motion shortly before the hearing. The district court is a reviewing court in this case, not trier of fact. In its order denying Frith's motion to expand the record, the district court stated:

> A review of the record and the lengthy transcript of the hearing held in this matter, discloses that considerable time was dedicated to the offers of exhibits by [Frith] and the objections to many of the offered exhibits.... The [ALJ] considered proffered exhibits individually and ruled on admissibility.

> [Frith] has made no showing that the additional evidence is relevant and material to the issues involved. In this case it is the obligation of [Frith] to specify which exhibit or other evidence is relevant to the issue at hand. [Frith] has not done this....

[¶ 32] There is nothing to show that receipt of this order just prior to the hearing prevented Frith from rebutting WSI's claims, or that it otherwise prejudiced him in any way. Having considered his remaining allegations that the district court did not provide him with a fair hearing, we conclude they are without merit.

### IX

[¶ 33] We have considered the other arguments raised by Frith, and find them to be without merit. The district court judgment is affirmed.

[¶ 34] GERALD W. VANDE WALLE, C.J., EVERETT NELS OLSON, S.J., DANIEL J. CROTHERS and CAROL RONNING KAPSNER, JJ., concur.

[¶ 35] The Honorable EVERETT NELS OLSON, Surrogate Judge, sitting in place of McEVERS, J., disqualified.