2013 ND 235

**Warren PARSONS, Appellant**

v.

**WORKFORCE SAFETY AND
INSURANCE FUND,**
Appellee.

**No. 20130197.**

Supreme Court of North Dakota.

Dec. 19, 2013.

Dean J. Haas, Bismarck, N.D., for appellant.

Lolita G. Hartl Romanick, Grand Forks, N.D., for appellee.

MARING, Justice.

[¶ 1] Warren Parsons appeals from a judgment affirming a Workforce Safety and Insurance Fund ("WSI") decision denying his claim for workers' compensation benefits. Parsons argues his cervical spine and left shoulder injuries are "compensable injuries" under N.D.C.C. § 65–01–02(10). We conclude WSI erred in determining Parsons' injury was not a compensable injury and denying his claim for benefits. We reverse the judgment and remand the case to WSI for further proceedings consistent with this opinion.

I

[¶ 2] On November 17, 2010, Parsons applied for workers' compensation benefits from WSI, alleging he sustained an injury to his left shoulder and neck while working for Ames Construction on October 12, 2010. Parsons worked for Ames Construction as a truck driver, driving a dump truck and hauling loads of clay used to build dikes. He claimed he developed pain at the base of his neck and into his left shoulder from hitting the seat belt repeatedly while driving the dump truck on rough roads.

[¶ 3] On October 14, 2010, Parsons saw Dr. Paul Fleissner for treatment. Fleissner diagnosed Parsons with cervical sprain and left shoulder strain and recommended physical therapy. On October 19, 2010, Parsons began seeing Jana Zwilling, NP, for physical therapy and she diagnosed Parsons with cervical and left shoulder strain.

[¶ 4] On November 22, 2010, Parsons saw Zwilling and reported that his condition had been improving but he started having pain again in his left shoulder and some numbness in his left arm after driving over more rough roads at work. Zwilling ordered an EMG (electromyogram) of the left upper extremity. The EMG showed no evidence of cervical radiculopathy or left brachial plexopathy, but was consistent with mild carpal tunnel syndrome, severe left ulnar neuropathy, and suggested underlying sensory peripheral polyneuropathy.

[¶ 5] On December 9, 2010, Parsons saw Fleissner with discomfort in his left shoulder. He told Fleissner he knew about the ulnar neuropathy and carpal tunnel syndrome and they were preexisting conditions. Fleissner recommended an MRI (magnetic resonance imaging) of the cervical spine. The MRI showed Parsons had chronic mild disc degeneration, with hypertrophic arthritic changes in the mid-cervical spine.

[¶ 6] On January 6, 2011, Parsons saw Dr. Vikram Podduturu, a physiatrist. Parsons reported variable pain on the left side of his shoulder and the scapular area, with radiation to the left upper extremity. Podduturu diagnosed Parsons with myo-

fascial pain, which is pain in the muscles and fascia, cervical degenerative disc disease, numbness of the arm, and neck sprain and strain. Podduturu discussed the differentials to Parsons' pain, including discogenic and myofascial pain, and prescribed Flexeril.

[¶ 7] Parsons continued to see Fleissner and Podduturu for treatment until March 29, 2011, when Parsons told Fleissner he would like to terminate care. Fleissner's impression was "left shoulder strain with radiation to the cervical spine and degenerative changes in the cervical spine." He concluded that Parsons could return to work and had reached maximum medical improvement. In June 2011, Parsons saw Zwelling and reported he still had some pain at the base of the neck and across the back of the shoulder, which would not fully go away. Zwilling's impression was myofascial pain in the trapezius distribution. Parsons began seeing Fleissner again and continued to report persistent pain in his left shoulder and neck. Parsons saw Fleissner multiple times in 2011 and once in January 2012. Fleissner diagnosed persistent left shoulder pain after Parsons' work injury.

[¶ 8] Meanwhile, on January 10, 2011, WSI sent Parsons notice of its decision to deny his application for workers' compensation benefits, finding there was no evidence of a work injury resulting from any employment activities. Parsons requested reconsideration. On May 16, 2011, WSI entered an order denying Parsons' claim, finding Parsons has a preexisting degenerative condition, his condition is not attributable to his work injury, and Parsons did not meet his burden of proving he is entitled to benefits.

[¶ 9] Parsons requested a hearing, which was held on March 6, 2012. Parsons and Dr. Christopher Janssen, who performed an independent medical exam at WSI's request, testified at the hearing. On May 2, 2012, the Administrative Law Judge ("ALJ") affirmed WSI's decision, holding Parsons' work injury was not a compensable injury, he has a preexisting degenerative condition of cervical degenerative disc disease, and the work injury triggered symptoms of his preexisting condition but did not substantially accelerate the progression or substantially worsen the severity of the condition.

[¶ 10] Parsons appealed to the district court. On October 1, 2012, the district court remanded the case to the ALJ to consider the record and make findings about whether Parsons' preexisting condition would have progressed similarly in the absence of his employment and whether Parsons' employment substantially accelerated the progression or substantially worsened the severity of the condition.

[¶ 11] On remand, the ALJ entered an order incorporating its previous decision and holding that its decision remained the same. The ALJ found Parsons was injured while working on October 12, 2010, and the work injury caused a cervical strain and a microscopic tear to his disc resulting in discogenic and myofascial pain. The ALJ further found Parsons had a preexisting condition at the time of the work injury, the preexisting condition made him vulnerable to the work injury, Parsons continues to have pain as the result of damage to his disc, and the work injury did not cause significant damage to his disc. The ALJ held the work injury did not substantially accelerate the progression or substantially worsen the severity of the preexisting degenerative disc disease. The ALJ found Parsons failed to show that his preexisting condition would likely not have progressed similarly in the absence of the work injury. The ALJ ruled Parsons' work injury was not a compensable injury and he is not entitled to

workers' compensation benefits. The district court affirmed the ALJ's decision.

## II

[¶ 12] Courts exercise limited appellate review of a final order by an administrative agency under the Administrative Agencies Practice Act, N.D.C.C. ch. 28–32. *Davenport v. Workforce Safety and Ins. Fund,* 2013 ND 118, ¶ 10, 833 N.W.2d 500. This Court reviews an administrative agency's decision in the same manner as the district court and must affirm the agency's decision unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of [N.D.C.C. ch. 28–32] have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. §§ 28–32–46 and 28–32–49.

[¶ 13] We review the agency's decision, and a court may not make independent findings of fact or substitute its judgment for the ALJ's findings. *Albright*

*v. North Dakota Workforce Safety and Ins.,* 2013 ND 97, ¶ 14, 833 N.W.2d 1. The court must consider the entire record and determine whether a reasoning mind could reasonably determine the findings were proven by the weight of the evidence. *Id.* The court gives deference to the ALJ's factual findings because the ALJ had the opportunity to observe witnesses and the responsibility to assess the witnesses' credibility and resolve conflicts in the evidence. *Davenport,* 2013 ND 118, ¶ 11, 833 N.W.2d 500. However, the court does not give deference to the ALJ's legal conclusions; rather, questions of law are fully reviewable on appeal. *Id.*

## III

[¶ 14] The dispositive issue is whether Parsons sustained a compensable injury under N.D.C.C. § 65–01–02(10). A claimant seeking workers' compensation benefits has the burden of proving by a preponderance of the evidence that he has suffered a compensable injury and is entitled to benefits. *See Davenport,* 2013 ND 118, ¶ 13, 833 N.W.2d 500; N.D.C.C. § 65–01–11. A compensable injury is "an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings." N.D.C.C. § 65–01–02(10). The claimant must prove by a preponderance of the evidence that the medical condition for which benefits are sought is causally related to a work injury. *Davenport,* at ¶ 13. The claimant is not required to show that the employment is the sole cause of the condition, but the claimant must demonstrate that the employment was a substantial contributing factor to the disease or injury. *Id.* A compensable injury must be established by medical evidence supported by objective medical findings. *Id.*

[¶ 15] A compensable injury does not include an injury "attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity." N.D.C.C. § 65–01–02(10)(b)(7). "A compensable injury does not exist when the claimant's employment merely triggers symptoms of the preexisting injury." *Johnson v. North Dakota Workforce Safety and Ins. Fund*, 2012 ND 87, ¶ 8, 816 N.W.2d 74.

[¶ 16] Here, the ALJ denied Parsons' claim for benefits, finding Parsons' injury was not a compensable injury because he had a preexisting condition, the work injury triggered symptoms of the preexisting condition, and the work injury did not substantially accelerate the progression or substantially worsen the severity of the condition. The ALJ found:

1. On or about October 12, 2010, Warren Parsons was injured while working for Ames Construction.

2. The injury caused cervical strain and a microscopic tear to his disc at C4–C5 or C5–C6, resulting in discogenic and myofascial pain.

3. At the time of the work injury, Parsons had a preexisting condition of cervical [degenerative disc disease], which changed the morphology of the discs at C4–C5 and C5–C6, weakening their structural integrity and making them especially vulnerable to injury. In effect, Parsons' cervical [degenerative disc disease] created a "weak link" in his back, which resulted in a small microscopic tear to the disc from bouncing on the truck seat and hitting the seat belt.

4. The cervical strain has resolved, and Parsons' taut bands and pain in the area of his left shoulder is the result of the damage to his disc.

5. The work injury did not cause significant damage to Parsons' disc.

6. Parsons' pain after the work injury was not a substantial worsening of his [degenerative disc disease].

7. The work injury did not substantially accelerate the progression or substantially worsen the severity of Parsons' preexisting condition.

The ALJ found there was "little doubt that Parsons' work injury triggered symptoms in his preexisting cervical [degenerative disc disease], and in fact worsened it[,]" but the work injury did not substantially accelerate or substantially worsen the preexisting condition. The ALJ relied on Janssen's testimony to support its finding that the work injury triggered symptoms in the preexisting condition. The ALJ found Janssen "stated to a reasonable degree of medical certainty that Parsons' work injury caused a cervical strain, which triggered the cervical [degenerative disc disease] to become symptomatic." The ALJ further found:

Dr. Janssen unequivocally stated that to a reasonable degree of medical certainty, the level of trauma to Parsons' disc triggered his symptoms. Dr. Janssen firmly tied Parsons' work injury to his [degenerative disc disease]. An essential step in Dr. Janssen's explanation of how Parsons' work activities caused damage to his disc was the fact that Parsons' [degenerative disc disease] had changed the morphology of the discs at C4–C5 and C5–C6, weakening their structural integrity and making them more susceptible to injury. In effect, Parsons' cervical [degenerative disc disease] created a "weak link" in his back, which resulted in a small microscopic tear to the disc from bouncing on the truck seat and hitting the seat belt. Dr.

Janssen testified that this small microscopic tear would not worsen the morphology of the disc over time. At no time did Dr. Janssen suggest that the small microscopic tear significantly damaged the disc or substantially worsened Parsons' [degenerative disc disease].

[¶ 17] The ALJ found the work injury caused a cervical strain and a microscopic tear to Parsons' disc at C4–C5 or C5–C6, which caused discogenic and myofascial pain. The evidence in the record supports this finding by the ALJ. Janssen testified that the truck's bouncing and the seat belt's contact with Parsons' trapezius muscle caused a stretch or small tear of the muscle, which is consistent with a strain of the muscle. He also testified that the impact of the seat belt on the trapezius muscle, which is directly attached to the cervical spine, caused a rotational and torsional force on the spine which caused microscopic injury to one or both discs at C4–C5 and C5–C6. Janssen testified the microscopic tears in Parsons' discs are causing chronic pain and Parsons' discogenic and myofascial pain are attributable to the work injury.

[¶ 18] However, the ALJ ultimately found Parsons' injury was attributable to his preexisting condition and applied the preexisting condition analysis to determine whether the injury was compensable. See N.D.C.C. § 65–01–02(10)(b)(7). Under N.D.C.C. § 65–01–02(10), a compensable injury does not include an injury attributable to a preexisting condition, including when the injury merely triggers symptoms in the preexisting condition. Id. However, if a preponderance of the evidence shows the medical condition for which benefits are being sought is causally related to a work injury and is not attributable to a preexisting condition, the preexisting condition analysis does not apply. See N.D.C.C. § 65–01–02(10).

[¶ 19] The ALJ found the work injury triggered symptoms in Parsons' preexisting condition because there was evidence the degenerative disc disease weakened the discs and made Parsons more susceptible to injury. The ALJ misapplied the law in finding the injury was attributable to Parsons' preexisting condition because the preexisting condition made him more susceptible to the injury. We have said " 'the fact that an employee may have physical conditions or personal habits' which make him or her more prone to such an injury does not constitute a sufficient reason for denying a claim if the preponderance of the evidence indicates that the injury 'was causally related to the worker's employment, with reasonable medical certainty.' " *Satrom v. North Dakota Workmen's Comp. Bureau,* 328 N.W.2d 824, 831 (N.D. 1982) (quoting *Nelson v. North Dakota Workmen's Comp. Bureau,* 316 N.W.2d 790, 795 (N.D.1982)); *see also Manske v. Workforce Safety and Ins.,* 2008 ND 79, ¶ 12, 748 N.W.2d 394. Parsons' susceptibility to the injury because of his preexisting condition did not make the injury attributable to the preexisting condition. Rather, there must be some evidence that the injury triggered symptoms in his preexisting condition or some other evidence that his current condition was attributable to the preexisting condition. *See Davenport,* 2013 ND 118, ¶¶ 27–28, 833 N.W.2d 500.

[¶ 20] A preponderance of the evidence does not support the ALJ's finding that the work injury triggered symptoms in Parsons' preexisting condition or that the pain he has been seeking treatment for is a symptom of his preexisting condition. The ALJ stated its findings were based on Janssen's testimony; however, Janssen's testimony does not support the ALJ's ultimate findings. Janssen ex-

plained how Parsons' discogenic pain is related to the work injury:

So we know that from the MRI findings as discussed before that Mr. Parsons had cervical degenerative disc disease prior to the injury that we're describing today. When he was going over the bumps on the road and suffered his injury, he had two different injuries. The safety belt contacted his trapezius muscle and caused a stretch or small tear of the trapezius muscle itself, which is consistent with a strain of the trapezius muscle. In addition, the impact of the safety belt over the trapezius muscle caused injury to the cervical spine itself, in particular the cervical intervertebral disc most likely at C4–C5 and C5–C6. The trapezius muscle is directly—contacts directly and directly attaches to the cervical spine. With the impact of the safety belt on the trapezius muscle, this caused a rotational and torsional force on the cervical spine which was enough to cause a very small, microscopic injury to one or both of the cervical intervertebral discs, most likely at C4–C5 or C5–C6. This injury could be as small as a very small stretch of the cartilage or a microscopic tear. Neither one would show up on the imaging findings.

Janssen testified that Parsons' bouncing in a truck seat over uneven terrain was a substantial contributing factor to his cervical strain and left shoulder soft tissue injuries. Janssen testified that the work injury caused microscopic tears in Parsons' discs, and the tears are causing chronic discogenic pain. Janssen explained that Parsons' current condition was caused by his work injury, stating "[t]o a reasonable degree of medical certainty, the cervical discogenic pain explains the left neck, shoulder, trapezius and parascapular pain as well as the taut bands at the time of this examination." Janssen testified that Par-

sons' degenerative disc disease was not caused by the work injury and was preexisting, the degenerative condition was separate from the work injury, and Parsons' current pain is not attributable to his degenerative disc disease. He testified that discogenic pain is not a part of the natural progression of degenerative disc disease and Parsons' cervical strain and cervical discogenic pain were causally related to the work injury. Janssen testified that if there was a relationship between Parsons' pain and his preexisting condition it was that the discs had abnormal morphology because of the preexisting condition and the abnormal morphology made them more susceptible to injury. He testified Parsons' injuries are not attributable to the degenerative disc disease. Janssen testified that the work injury and the preexisting condition are separate issues; Parsons' pain is not attributable to his degenerative disc disease; the degenerative condition is not making Parsons' symptoms worse or his clinical picture worse; and it is Parsons' discogenic pain, which is caused by his work injury, that is causing his current symptoms.

[¶ 21] The ALJ found and the evidence supported the ALJ's finding that Parsons' pain resulted from the tears in his discs, which were caused by the work injury. Although there was evidence Parsons' preexisting condition made him more vulnerable to the work injury, the preponderance of the evidence established the pain was not a symptom of Parsons' preexisting condition and the injury did not trigger symptoms of his preexisting condition. Parsons is not seeking benefits for the preexisting condition; rather he is seeking benefits for the work injury. Based on the entire record, we conclude a reasoning mind could not reasonably determine the ALJ's findings that Parsons' injuries are attributable to his preexisting condition

and that his employment triggered symptoms of his preexisting condition were proven by the weight of the evidence in the record. The medical evidence supported by objective medical findings establishes a causal relationship between the work injury and Parsons' condition for which he is seeking medical treatment. The ALJ erred as a matter of law in deciding Parsons failed to prove he sustained a compensable injury. We reverse WSI's decision denying Parsons' claim for benefits.

[¶ 22] Because the ALJ determined Parsons failed to prove that his injury was a compensable injury and that he was entitled to benefits, there was not any evidence or findings about the amount and type of benefits to which Parsons is entitled. Therefore, we remand to WSI for a determination of Parsons' benefits.

### IV

[¶ 23] Parsons requests the case be remanded to the district court to determine his eligibility for attorney's fees under N.D.C.C. § 28–32–50. Under N.D.C.C. § 28–32–50(1), a court must award a party, who is not an administrative agency, reasonable attorney's fees and costs if the party is the prevailing party and the court finds the administrative agency acted without substantial justification. Parsons requests the case be remanded for WSI to show its position was "substantially justified." However, Parsons is incorrect. The statute requires the claimant to not only prevail, but also to prove the agency acted without substantial justification. *Carlson v. Workforce Safety and Ins.*, 2012 ND 203, ¶ 24, 821 N.W.2d 760. The district court must initially decide whether a claimant should be awarded reasonable attorney's fees under N.D.C.C. § 28–32–50. *Rojas v. Workforce Safety and Ins.*, 2006 ND 221, ¶ 18, 723 N.W.2d

403. Parsons' course of action is to petition the district court for payment of attorney's fees under N.D.C.C. § 28–32–50. *See id.* at ¶¶ 8, 18.

### V

[¶ 24] Because our resolution of the compensable injury issue is dispositive, we need not address other issues or arguments. The district court judgment and WSI's decision denying Parsons' claim for benefits are reversed. We remand to WSI for further proceedings consistent with this opinion.

[¶ 25] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.

CROTHERS, Justice, dissenting.

[¶ 26] I respectfully dissent.

[¶ 27] Parsons experienced a workplace injury. The ALJ so stated, finding, "On or about October 12, 2010, Warren Parsons was injured while working for Ames Construction." Majority opinion at ¶ 16. The ALJ also found, "[t]he injury caused cervical strain and a microscopic tear to his disc at C4–C5 or C5–C6, resulting in discogenic and myofascial pain." *Id.* However, for compensability by WSI, the question is not whether a worker was injured or affected by injury. Rather, the question is whether the worker sustained a "compensable injury." N.D.C.C. § 65–01–02(10). The majority states agreement with this construct. *See* Majority opinion at ¶ 14 ("The dispositive issue is whether Parsons sustained a compensable injury under N.D.C.C. § 65–01–02(10).").

[¶ 28] The majority reverses the ALJ's decision, holding:

"Under N.D.C.C. § 65–01–02(10), a compensable injury does not include an injury attributable to a preexisting condi-

tion, including when the injury merely triggers symptoms in the preexisting condition. *Id.* However, if a preponderance of the evidence shows the medical condition for which benefits are being sought is causally related to a work injury and is not attributable to a preexisting condition, the preexisting condition analysis does not apply. *See* N.D.C.C. § 65–01–02(10)."

Majority opinion at ¶ 18.

[¶ 29] Under the statutory framework applicable here, any relationship between a work injury and a compensable injury necessarily includes a determination whether the claimant has a preexisting condition. Whether the claimant has a preexisting injury or condition is a fact question. *Bergum v. N.D. Workforce Safety and Ins.*, 2009 ND 52, ¶¶ 9–10, 26, 764 N.W.2d 178; *Elliott v. N.D. Workers Comp. Bureau*, 435 N.W.2d 695, 699 (N.D.1989) ("[I]ssue of whether a preexisting disabling condition was sufficiently established to serve as a basis for apportionment is a question of fact.").

[¶ 30] The definition of compensable injury provides:

> " 'Compensable injury' means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings."

N.D.C.C. § 65–01–02(10). The legislature specified that "compensable injury" does not include:

> "(7) Injuries attributable to a preexisting injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the preexisting injury, disease, or other condition unless the employment substan-

tially accelerates its progression or substantially worsens its severity."

N.D.C.C. § 65–01–02(10)(b)(7) (2009).

[¶ 31] "We are required to construe and apply statutes by looking first at the words used in the statute, giving them their plain, ordinary, and commonly understood meaning." *Chamley v. Khokha*, 2007 ND 69, ¶ 48, 730 N.W.2d 864 (Crothers, J., concurring in part and dissenting in part); N.D.C.C. § 1–02–02. Reading this statute as a whole, a claimant must start by proving he sustained "an injury by accident arising out of and in the course of hazardous employment." N.D.C.C. § 65–01–02(10). When the injury is "attributable to a preexisting injury, disease, or other condition," the claimant also must prove that the employment substantially accelerated or substantially worsened the severity of the preexisting injury, disease or other condition. N.D.C.C. § 65–01–02(10)(b)(7).

[¶ 32] Here, the ALJ looked to both parts of section 65–01–02(10). Doing so, the ALJ correctly applied the law, as evidenced by his November 28, 2012 Findings of Fact, Conclusions of Law and Order on Remand:

> "Both before and after *Mickelson* [*v. N.D. Workforce Safety Ins.*, 2012 ND 164, 820 N.W.2d 333], Parsons' argument has been that if a work injury causes an asymptomatic preexisting condition to become symptomatic, then the preexisting condition has automatically been made substantially worse for purposes of N.D.C.C. § 65–01–02(10)(b)(7). In another version of the same argument, he says that if the clinical picture after a work injury is worse for someone with a preexisting condition, then once again the preexisting condition has been made substantially worse. While these factual scenarios are relevant in considering whether a preexisting condition is

substantially worse after a work injury, they are not controlling. Nowhere in *Mickelson*, or any other Supreme Court opinion for that matter, does the Court say that a preexisting condition going from asymptomatic before a work injury to symptomatic after a work injury is unavoidably a compensable injury.

"Under N.D.C.C. § 65–01–02(10)(b)(7), a compensable injury does not include injuries attributable to a preexisting condition, including when the employment acts as a trigger to produce symptoms in the preexisting condition, unless the work injury substantially accelerates the progression or substantially worsens the severity of the preexisting condition. The distinction between 'a preexisting condition' and 'symptoms of the preexisting condition' has led some to suggest they are treated differently under (10)(b)(7). The suggestion seems to be that if a work injury *only* triggers symptoms in a preexisting condition, that ends the inquiry and there is no reason to further consider whether the symptoms triggered by the work injury amount to a *substantial* acceleration or worsening of the preexisting condition. Such a reading of (10)(b)(7), however, is more in the mind of the reader than inherent in the language of the statute. Whether it is the condition itself or the symptoms of the condition that are being looked at, the question remains the same under (10)(b)(7): has the work injury substantially accelerated the progression or substantially worsened the severity of the preexisting condition?[1] An example, making use of the concept of a 'set' borrowed from set theory, might help to explain this. The word 'including' in the sentence 'We saw a bunch of dogs at the park, including a Dalmatian and a German Shepherd.' signals that what follows the word 'including' is part of the set of dogs. What follows the word 'including' in that sentence specifically lists and identifies something 'included' in the set of dogs. The word 'including' in (10)(b)(7) functions in the same way. In effect it says that the set of 'injuries attributable to a preexisting condition' includes 'when the employment acts as a trigger to produce symptoms in the preexisting injury.' Thus, when the focus is on the symptoms triggered in a preexisting condition by a work injury, the question then becomes 'have the symptoms which were triggered by the work injury *substantially* accelerated or substantially worsened the severity of the preexisting condition?' This also fits with the statement in *Geck v. North Dakota Workers Compensation Bureau*, 583 N.W.2d 621 (N.D.1998), that pain can be a symptom which aggravates a preexisting condition. When the court in *Geck* remanded the case to the hearing officer, it was to allow the hearing officer to decide whether the pain in that case amounted to a substantial aggravation of a preexisting condition, or in other words, whether the pain symptoms substantially accelerated or substantially worsened the severity of the preexisting condition.

fn. 1 "As stated in the original decision in this matter, 'Just as a work injury may trigger symptoms in a preexisting condition which *do not* make it substantially worse, a work injury also may produce symptoms in a preexisting condition which *do* make it substantially worse. So pain can be an aggravation of an underlying condition, as the Court stated in *Geck*. But in order to be compensable, it must amount to a "substantial aggravation" [ ] of a preexisting condition.' P14."

Additional quotations from the ALJ's decisions could be cited to demonstrate what I

believe is a correct application of N.D.C.C. § 65–01–02(10)(b)(7). However, those additional citations only would confirm that the ALJ's legal analysis is both a correct reading and a correct application of the law. The question therefore becomes whether the ALJ's findings of fact should be sustained.

[¶ 33] The majority concludes the ALJ's fact findings are not supported by sufficient evidence. The majority reverses, stating:

"Although there was evidence Parsons' preexisting condition made him more vulnerable to the work injury, the preponderance of the evidence established the pain was not a symptom of Parsons' preexisting condition and the injury did not trigger symptoms of his preexisting condition. Parsons is not seeking benefits for the preexisting condition; rather he is seeking benefits for the work injury. Based on the entire record, we conclude a reasoning mind could not reasonably determine the ALJ's findings that Parsons' injuries are attributable to his preexisting condition and that his employment triggered symptoms of his preexisting condition were proven by the weight of the evidence in the record. The medical evidence supported by objective medical findings establishes a causal relationship between the work injury and Parsons' condition for which he is seeking medical treatment."

Majority opinion at ¶ 21.

[¶ 34] The majority notes, but I believe does not abide by, our very limited review of an executive branch agency's factual determinations. Majority opinion at ¶ 12; *Meier v. N.D. Dept. of Human Servs.*, 2012 ND 134, ¶ 4, 818 N.W.2d 774 ("We are mindful that an appeal from an administrative agency to the district court invokes that court's appellate jurisdiction, *Lewis v. North Dakota Workers Comp.*

*Bureau*, 2000 ND 77, ¶ 8, 609 N.W.2d 445, and that appeals from an administrative agency involve issues of separation of powers of the three branches of government. *See Power Fuels, Inc. v. Elkin*, 283 N.W.2d 214, 220–21 (N.D.1979); N.D. Const. art. XI, § 26."). Applying our highly deferential standard of review, we must affirm the agency's decision unless we conclude legal error exists or the findings of fact are not supported by a preponderance of the evidence. N.D.C.C. §§ 28–32–49 and 28–32–46.

[¶ 35] When a court reviews the ALJ's findings of fact, the question is not whether evidence exists that would allow a factfinder to make a contrary ruling. The question instead is whether the findings of fact made by the agency are supported by a preponderance of the evidence. N.D.C.C. § 28–32–46(5); *Bishop v. N.D. Workforce Safety and Ins.*, 2012 ND 217, ¶ 5, 823 N.W.2d 257. When making this determination, it is not for this Court to determine whether it would have similarly decided the case; rather the test is whether competent evidence supports the ALJ's and WSI's findings of fact. *Power Fuels*, 283 N.W.2d at 220 ("In construing the 'preponderance of the evidence' standard to permit us to apply the weight-of-the-evidence test to the factual findings of an administrative agency, we do not make independent findings of fact or substitute our judgment for that of the agency.").

[¶ 36] Here, the ALJ considered and weighed the evidence. He made two sets of findings, conclusions and orders—one after the hearing and the other after remand from the district court—to consider the impact of a legal ruling made by this Court in another case. In both sets, the ALJ found Parsons did not satisfy his burden of proving he suffered a compensable injury. In both sets of findings, the ALJ determined Parsons' medical evidence

was inferior to that offered by WSI. On this basis, the ALJ concluded, "The greater weight of the evidence, however, does not show that the work injury substantially accelerated or substantially worsened his preexisting condition. Parsons has not met his burden to show by a preponderance of the evidence that his preexisting cervical DDD would likely not have progressed similarly in the absence of the work injury."

[¶ 37] I would hold the ALJ's findings are supported by competent evidence. On that basis, I would affirm the ALJ's decision under our limited legal authority to review factual findings.

[¶ 38] DALE V. SANDSTROM, J., concurs.