# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 198

State of North Dakota, by and through
Workforce Safety and Insurance,                                    Appellant

v.

John Sandberg,                                                                       Appellee

and

Park Construction,                                                            Respondent

No. 20180442

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

REVERSED AND REMANDED.

Opinion of the Court by McEvers, Justice.

Sean F. Marrin, Special Assistant Attorney General, Grand Forks, ND, for appellant.

Dean J. Haas, Bismarck, ND, for appellee.

**McEvers, Justice.**

[¶1]     Workforce Safety and Insurance ("WSI") appeals from a judgment affirming an administrative law judge's ("ALJ") decision that John Sandberg sustained a compensable injury because his repetitive work activities substantially worsened the severity of his preexisting degenerative disc condition.  We conclude the ALJ's findings are not sufficient to understand the basis for the decision, and we reverse and remand for further proceedings.

I

[¶2]     Sandberg worked as a truck driver in the oil industry in the 1970s and 1980s, and he began operating heavy equipment for various construction companies in the 1980s and 1990s.  Sandberg testified he operated heavy equipment as a seasonal employee for Park Construction from 2002 through September 28, 2015.  According to Sandberg, he primarily operated a track hoe to unload and place rip rap along raised railroad grade.  Sandberg testified that while operating the track hoe, he was required to wear a seatbelt holding him in a seat consisting of a board covered with a piece of half-inch foam, that he sat at an angle while operating the track hoe and maneuvering large irregularly shaped rocks into place over uneven terrain, and that there was frequent jarring, slipping, and twisting when he moved the track hoe over the rocks while manipulating the controls and rotating to see around the machine.

[¶3]     Sandberg's medical history included treatment for a non-work related incident resulting in a sore right neck and right lower back in March 1998, and a contemporaneous x-ray disclosed mild degenerative arthritis in his cervical spine.  Sandberg also sought medical care for upper back and neck pain after a non-work related car accident in a parking lot in April 2006, and he was diagnosed with a soft tissue injury, consisting of an upper back and neck sprain.

1

[¶4]     In July 2003, Sandberg saw Dr. Michael Remmick for chiropractic adjustments for a stiff neck, pain down his right shoulder and arm, and numbness in his fingertips. Dr. Remmick's treatment notes stated that Sandberg reported jarring and twisting from operating a track hoe at work.  Sandberg received several adjustments from Dr. Remmick into September 2003, and after the last adjustment, Dr. Remmick noted Sandberg had responded favorably to the treatment and should return for further treatment only if needed.

[¶5]     In November 2011, Sandberg again sought chiropractic treatment from Dr. Remmick, describing his work on heavy equipment and complaining of pain and discomfort in his upper back, neck, left shoulder, and arm, and numbness in his left hand.   Dr. Remmick performed a series of chiropractic adjustments between November 2011 and September 2012. Sandberg also saw Dr. Remmick for a series of chiropractic adjustments between March and September 2015.   According to Sandberg, he could no longer perform his job for Park Construction because of back pain and he took an early seasonal layoff on September 28, 2015, which was his last day of work for Park Construction.

[¶6]     In May 2016, Sandberg reported complaints of neck and upper back pain during a preoperative evaluation for cataract surgery, and x-rays and MRIs revealed multilevel degenerative disc disease.  In July 2016, Sandberg filed a claim with WSI for a "[c]ervical (neck)" injury, identifying his last day of work with Park Construction on September 28, 2015, as the injury date.  Sandberg's claim described how the injury occurred:

> unloading and placing rock with excavator with continuous bouncing, slimming [sic], due to ruff [sic] terrain, with repetitive movement, arms and head continuous movement over long periods of time, arms at my side, hands running joysticks, head moving side to side, up and down, resulting in extreme neck, back and shoulder pain, with numbing in both arms and hands.

[¶7]     WSI denied Sandberg's claim and his request for reconsideration, determining that his upper and middle back issues were a preexisting condition of degenerative disc disease and that his employment acted only as a trigger to produce symptoms in

2

the preexisting condition and did not cause or increase the risk of his cervical degenerative disc disease. WSI determined Sandberg's work activities did not substantially accelerate the progression or substantially worsen his preexisting condition.

[¶8] Sandberg requested an administrative hearing. An independent ALJ identified the issues for resolution at the hearing as whether Sandberg proved by a preponderance of evidence that his repetitive work activities: (1) were a substantial contributing factor to his cervical and thoracic degenerative conditions; or (2) substantially accelerated or worsened his preexisting cervical spine and thoracic spinal conditions.

[¶9] At the hearing, Sandberg relied on testimony and a letter from Dr. Remmick and a letter from another treating physician, Dr. Steven Schoneberg, to support his claim that his repetitive work activities substantially accelerated the progression or substantially worsened the severity of his preexisting cervical and thoracic condition. Dr. Remmick testified there was more than just pain from a preexisting degenerative disc disease and there was an "accumulative trauma type effect" to Sandberg's soft tissues, supportive structures, and joint structures from his repetitive activities. Dr. Remmick testified there was a progression of significant physiological change in x-ray imaging from 2003 through the latest imaging. Dr. Schoneberg opined that Sandberg's work could have substantially contributed to the development and gradual worsening of his condition and likely contributed to his chronic neck and mid-back pain. WSI's medical consultant, Dr. Gregory Peterson, testified there was no significant clinical evidence demonstrating that Sandberg's work activities accelerated changes in his condition or that his condition was caused by his work activities. Dr. Peterson opined that Sandberg's work acted as a trigger to produce symptoms in his preexisting condition but did not cause or substantially accelerate the progression of his degenerative disc disease.

[¶10] The ALJ issued a decision stating Dr. Peterson's opinion that Sandberg's work did not cause or substantially accelerate his condition was in conflict with the

3

opinions of Dr. Remmick and Dr. Schoneberg and finding Dr. Peterson's opinion was more persuasive. The ALJ determined that Sandberg's employment did not cause or substantially accelerate the progression of his degenerative disc disease. However, the ALJ also found that Sandberg's employment substantially increased the severity of his pain and did not merely trigger symptoms but substantially worsened the severity of his degenerative disc disease. The ALJ decided Sandberg had met his burden of proving he sustained a compensable injury. The district court affirmed the ALJ's decision.

II

[¶11] Under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32, courts exercise limited appellate review of a final order by an administrative agency. *Davenport v. Workforce Safety & Ins. Fund*, 2013 ND 118, ¶ 10, 833 N.W.2d 500; *Mickelson v. N.D. Workforce Safety & Ins.*, 2012 ND 164, ¶ 7, 820 N.W.2d 333. Under N.D.C.C. §§ 28-32-46 and 28-32-49, the district court and this Court must affirm an order by an administrative agency unless:

1. The order is not in accordance with the law.
2. The order is in violation of the constitutional rights of the appellant.
3. The provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions of law and order of the agency are not supported by its findings of fact.
7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

4

[¶12] In reviewing an administrative agency's factual findings, a court may not make independent findings of fact or substitute its judgment for the agency's findings; rather, a court must determine only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Davenport*, 2013 ND 118, ¶ 11, 833 N.W.2d 500. When reviewing an appeal from an independent ALJ's final order, similar deference is given to the ALJ's factual findings because the ALJ had the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve conflicts in the evidence. *Id.* Similar deference is not given to an independent ALJ's legal conclusions, however, and a court fully reviews an ALJ's legal conclusions on questions of law, including the interpretation of a statute. *Id.* Under N.D.C.C. § 28-32-39(1), an administrative agency "shall make and state concisely and explicitly its findings of fact." We have said an agency's findings are adequate if they enable a reviewing court to understand the agency's decision. *Pleinis v. N.D. Workers Comp. Bureau*, 472 N.W.2d 459, 462 (N.D. 1991); *F.O.E. Aerie 2337 v. N.D. Workers Comp. Bureau*, 464 N.W.2d 197, 199-200 (N.D. 1990).

## III

[¶13] WSI argues the ALJ's decision misapplied the law, utilized inappropriate speculative evidence, is not supported by credible objective medical evidence, and is contrary to the ALJ's prior finding about the persuasiveness of Dr. Peterson's opinion that Sandberg's work did not cause or substantially accelerate the progression of his degenerative disc disease. WSI argues the mere triggering of pain symptoms in a preexisting injury, disease, or other condition is not sufficient to establish a compensable injury and the medical evidence in this case does not establish Sandberg sustained a compensable injury.

[¶14] Claimants have the burden of proving by a preponderance of evidence they have suffered a compensable injury and are entitled to workers' compensation benefits. N.D.C.C. § 65-01-11; *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND

5

52, ¶ 11, 764 N.W.2d 178. A claimant must prove the condition for which benefits are sought is causally related to a work injury. *Bergum*, at ¶ 11. To establish a casual connection, a claimant must demonstrate the claimant's employment was a substantial contributing factor to the injury and need not show employment was the sole cause of the injury. *Bruder v. N.D. Workforce Safety & Ins. Fund*, 2009 ND 23, ¶ 8, 761 N.W.2d 588.

[¶15] Section 65-01-02(10), N.D.C.C., defines a "compensable injury" for purposes of workers' compensation law and provides, in relevant part:

> 10.  "Compensable injury" means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.
> . . . .
> b.  The term does not include:
> . . . .
> (7)  Injuries attributable to a pre-existing injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the pre-existing injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity. Pain is a symptom and may be considered in determining whether there is a substantial acceleration or substantial worsening of a pre-existing injury, disease, or other condition, but pain alone is not a substantial acceleration or a substantial worsening.

[¶16] The issue in this appeal involves the continuing efforts to apply the statutory delineation between work activities that merely trigger pain symptoms in a preexisting injury, disease, or other condition and are not compensable and work activities that substantially accelerate the progression or substantially worsen the severity of a preexisting injury, disease, or other condition and are compensable. *See, e.g., Parsons v. Workforce Safety & Ins. Fund*, 2013 ND 235, ¶¶ 14-22, 841 N.W.2d 404; *Davenport*, 2013 ND 118, ¶¶ 20-29, 833 N.W.2d 500; *Mickelson*, 2012 ND 164, ¶¶ 9-23, 820 N.W.2d 333; *Johnson v. N.D. Workforce Safety & Ins. Fund*, 2012 ND 87,

¶¶ 7-10, 816 N.W.2d 74; *Curran v. N.D. Workforce Safety & Ins.*, 2010 ND 227, ¶¶ 18-28, 791 N.W.2d 622.

[¶17] In *Mickelson*, 2012 ND 164, ¶¶ 1, 10, 12, 820 N.W.2d 333, this Court considered a denial of a workers compensation claim based on an alleged substantial worsening of a latent preexisting degenerative disc disease under the prior version of N.D.C.C. § 65-01-02(10)(b)(7).[1] A plurality of this Court discussed the disjunctive statutory language authorizing compensation for employment activities that substantially accelerate the progression or substantially worsen the severity of a preexisting injury, disease, or other condition and said:

> When those terms are considered together to give meaning to each term, they mean injuries attributable to a preexisting injury, disease, or other condition are compensable if the employment in some real, true, important, or essential way makes the preexisting injury, disease or other condition more unfavorable, difficult, unpleasant, or painful, or in some real, true, important, or essential way hastens the progress or development of the preexisting injury, disease, or other condition. In contrast, injuries attributable to a preexisting injury, disease, or other condition are not compensable if employment acts like a mechanical trigger in initiating a process or reaction to produce subjective evidence of a disease or physical disturbance or something that indicates the presence of a bodily disorder. We recognize . . . that pain can be a symptom, or subjective evidence, of an injury, disease or other condition. Under the ordinary meaning of those terms, however, employment can also substantially worsen the severity, or substantially accelerate the progression of a preexisting injury, disease, or other condition when employment acts as a substantial contributing factor to substantially increase a claimant's pain. That conclusion is consistent with our decision in *Geck [v. N.D. Workers Comp. Bureau]*, that pain can be a substantial aggravation of an underlying latent condition. 1998 ND 158, ¶ 10, 583 N.W.2d 621. . . . [W]e conclude part of the analysis

---

[1]Section 65-01-02(10)(b)(7), N.D.C.C., was amended in 2013 after this Court's decision in *Mickelson* to add the last sentence in subsection (7) that "Pain is a symptom and may be considered in determining whether there is a substantial acceleration or substantial worsening of a preexisting injury, disease, or other condition, but pain alone is not a substantial acceleration or a substantial worsening." 2013 N.D. Sess. Laws ch. 498, § 1. The 2013 amendment states that it applies to all claims regardless of the date of injury. *Id.* at § 2.

for assessing compensability of injuries attributable to a latent preexisting injury, disease, or other condition is whether or not the underlying preexisting injury, disease, or other condition would likely have progressed similarly in the absence of employment. *See Pleinis*, 472 N.W.2d at 462-63. We decline to construe those terms so narrowly as to require only evidence of a substantial worsening of the disease itself to authorize an award of benefits. Rather, the statute also authorizes compensability if employment substantially accelerates the progression or substantially worsens the severity of the injury, disease, or other condition, which we conclude requires consideration of whether the preexisting injury, disease or other condition would have progressed similarly in the absence of employment. Under that language, employment substantially accelerates the progression or substantially worsens the severity of a preexisting injury, disease, or other condition when the underlying condition likely would not have progressed similarly in the absence of employment. That interpretation provides additional clarification and explanation for delineating between noncompensability when employment triggers symptoms in a preexisting latent injury, disease, or other condition and compensability when employment substantially accelerates the progression or substantially worsens the severity of the preexisting injury, disease, or other condition. That interpretation is also consistent with the purpose of workers compensation law to provide "sure and certain relief" for workers, *see* N.D.C.C. § 65-01-01, and with the principle that employment must be a substantial contributing factor for a compensable injury and need not be the sole cause of the injury. *Bruder*, 2009 ND 23, ¶ 8, 761 N.W.2d 588.

*Mickelson*, at ¶¶ 20-21.

[¶18] In *Mickelson*, 2012 ND 164, ¶ 23, 820 N.W.2d 333, the plurality remanded for further proceedings, concluding an ALJ misapplied the law by looking too narrowly at the claimant's degenerative disc disease itself without considering whether the injury, disease, or other condition likely would not have progressed similarly in the absence of the claimant's employment so as to substantially accelerate the progression or substantially worsen the severity of the claimant's injury, disease, or other condition. A special concurrence agreed with the conclusion that pain could be an aggravation of an underlying arthritic condition and noted a dissatisfaction with the statutory failure to distinguish "those instances in which pain aggravates an underlying condition, i.e., substantially worsens the severity of the condition, from

8

those instances in which . . . pain is only a symptom of the condition triggered by employment." *Id.* at ¶ 30 (VandeWalle, Chief Justice, concurring specially). The special concurrence concluded a remand for further consideration of the claim was necessary. *Id.*

[¶19] In *Davenport*, 2013 ND 118, ¶ 20, 833 N.W.2d 500, this Court considered an ALJ's determination that a claimant's preexisting degenerative spine and lower back conditions were not a compensable injury under the pre-2013 version of N.D.C.C. § 65-01-02(10)(b)(7). We discussed the *Mickelson* decision:

> Under *Mickelson*, depending on the specific facts and circumstances and the medical evidence supported by objective medical findings, pain can be a substantially worsening of the severity or a substantial acceleration of the progression of a preexisting condition and pain also can be a symptom of the condition which is triggered by employment. *Id.* at ¶¶ 20-23, 30. Under *Mickelson*, however, pain alone does not establish a substantial acceleration or a substantial worsening of a preexisting condition for purposes of a compensable injury. *Id.* at ¶ 30. Rather, *Mickelson* does not eliminate the requirement that there must be medical evidence supported by objective medical findings for a compensable injury. *See* N.D.C.C. § 65-01-02(10). In *Mickelson*, there was medical evidence supported by objective medical findings from the claimant's treating providers which stated his latent condition was directly related to his employment. *Id.* at ¶¶ 3-4. On that record, a majority of this Court concluded to remand for further findings on whether the claimant's underlying injury, disease or other condition would likely not have progressed similarly in the absence of employment which would indicate the employment situation substantially accelerated the progression or substantially worsened the severity of the underlying later condition. *Id.* at ¶ 23.

*Davenport*, at ¶ 25.

[¶20] In *Davenport*, 2013 ND 118, ¶ 26, 833 N.W.2d 500, we distinguished Davenport's history of neck and lower back complaints hastened by his chronic smoking from Mickelson's latent condition, and we discussed the medical evidence in that case in conjunction with the ALJ's decision denying Davenport benefits. We affirmed the ALJ's decision:

> The ALJ's decision identifies Davenport's prior problems with his lower back, left shoulder and cervical spine. Unlike the record in

9

> *Mickelson*, Davenport's treating physician's notes and Dr. Van Norman's agreement with Dr. Burton's independent medical examination support the ALJ's decision that medical evidence supported by objective medical findings does not establish a causal relationship between Davenport's work injuries and the pain from his degenerative condition. Dr. Burton's independent medical examination provides evidence Davenport's condition, including his pain symptoms, would have progressed similarly in the absence of the work injuries.
>
> A claimant has the burden to provide medical evidence supported by objective medical findings to show a compensable injury. *See* N.D.C.C. § 65-01-02(10). On this record and under our deferential standard of review, a reasoning mind could reasonably conclude Davenport failed to sustain that burden. We conclude a reasoning mind could reasonably conclude the ALJ's findings were proven by the weight of the evidence and support the ALJ's conclusions. We therefore sustain the ALJ's decision that Davenport failed to establish a compensable injury under N.D.C.C. § 65-01-02(10)(b)(7).

*Davenport*, at ¶¶ 28-29.

[¶21] Both *Davenport*, 2013 ND 118, ¶¶ 25, 28, 833 N.W.2d 500, and *Mickelson*, 2012 ND 164, ¶¶ 21, 23, 820 N.W.2d 333, focused on the existence of medical evidence supported by objective medical findings which would show the injury, disease, or other condition likely would not have progressed similarly in the absence of employment and which would indicate the employment substantially accelerated the progression or substantially worsened the severity of the injury, disease, or other condition.

[¶22] In 2013, the legislature amended the definition of "compensable injury" in N.D.C.C. § 65-01-02(10)(b)(7) to add the language that "[p]ain is a symptom and may be considered in determining whether there is a substantial acceleration or substantial worsening of a preexisting injury, disease, or other condition, but pain alone is not a substantial acceleration or a substantial worsening." 2013 N.D. Sess. Laws ch. 498, § 1. *See* fn. 1, *supra*. As originally introduced, the proposed language provided that "[p]ain is a symptom and is not a substantial acceleration or substantial worsening of a preexisting injury, disease, or other condition." According to a representative of WSI, the proposed language was in response to this Court's decision in *Mickelson* to clarify that pain symptoms are not a substantial worsening or progression of a

10

preexisting condition. *See Hearing on H.B. 1163, Before House Industry Business and Labor Comm.*, 63rd N.D. Legis. Sess. (Jan. 21, 2013) (written testimony of Tim Wahlin, WSI Chief of Injury Services). The language was amended during the legislative process to the current language.

[¶23] The plain language of the 2013 amendment to N.D.C.C. § 65-01-02(10)(b)(7) is consistent with *Mickelson* and *Davenport*, and clarifies that pain is a symptom of a preexisting injury, disease, or other condition and may be considered in determining whether there is a substantial acceleration of the progression or a substantial worsening of the severity of the condition, but pain alone is not a substantial acceleration or a substantial worsening. Morever, the 2013 amendment did not alter the requirement in N.D.C.C. § 65-01-02(10), that a compensable injury must be established by medical evidence supported by objective medical findings. *See Davenport*, 2013 ND 118, ¶ 29, 833 N.W.2d 500. We have recognized that objective medical findings may include a physician's medical opinion based on an examination, a patient's medical history, and the physician's education and experience. *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 25, 738 N.W.2d 892.

[¶24] Here, the ALJ identified the issues for resolution at the administrative hearing as whether Sandberg proved by a preponderance of evidence that his repetitive work activities: (1) were a substantial contributing factor to his cervical and thoracic degenerative conditions; or (2) substantially accelerated or worsened his preexisting cervical spine and thoracic spine conditions. The ALJ's findings of fact and conclusions of law state:

> The medical opinion of Dr. Peterson as to whether Mr. Sandberg's work caused his disc disease or caused it to substantially accelerate is in conflict with the opinions of Drs. Remmick and Schoneberg. . . . Dr. Peterson's opinion is the more persuasive. The greater weight of the evidence does not establish that Mr. Sandberg's work caused or substantially accelerated the progression of Mr. Sandberg's degenerative disc disease.
> . . . .
> A preponderance of the evidence does establish that operating the track hoe moving rip rap caused Mr. Sandberg's degenerative disc disease to become more painful. Prior to 2015, the pain lessened after

11

rest during seasonal layoff and chiropractic treatment. Following, and as a result of a period of pushing rip rap year round, in 2015 Mr. Sandberg's work induced pain became worse and no longer responded favorably to rest and treatment.

A preponderance of the evidence does establish that Mr. Sandberg's jarring work over time has increased the severity of the symptom of pain produced by his pre-existing degenerative disc disease that has caused him to seek considerable medical treatment and ultimately prevented him from performing his lifelong occupation.

. . . .

Mr. Sandberg has met his burden of proving by a preponderance of the evidence that he has sustained a compensable injury in that he has proven by a preponderance of the evidence that his repetitive work activities did not merely trigger symptoms, but rather substantially increased his pain and thus substantially worsened the severity of his degenerative disc condition.

[¶25] The ALJ found persuasive Dr. Peterson's medical opinion that Sandberg's work did not cause or substantially accelerate the progression of his degenerative disc disease and determined the greater weight of the evidence did not establish Sandberg's work activities caused or substantially accelerated the progression of his preexisting degenerative disc disease. The ALJ also found, however, that Sandberg's work activities caused his degenerative disc disease to be more painful and increased the severity of the symptom of pain from his condition. As the trier-of-fact, the ALJ may rely upon either party's witnesses, and the ALJ has the responsibility to weigh the credibility of medical evidence and adequately explain its reasoning. *See, e.g., Workforce Safety & Ins. v. Auck*, 2010 ND 126, ¶ 14, 785 N.W.2d 186. Here, the ALJ decided Sandberg had established a compensable injury by showing his work activity substantially worsened the severity of his condition. The ALJ's decision states that Sandberg's work activities increased the severity of the symptom of pain from his preexisting degenerative disc disease, but the language of N.D.C.C. § 65-01-02(10)(b)(7) states that "pain alone is not a substantial acceleration or a substantial worsening" of a preexisting injury, disease, or other condition. Pain may be considered in determining whether there is a substantial worsening of a preexisting injury, disease, or other condition but a compensable injury must be established by

12

medical evidence supported by objective medical findings. N.D.C.C. § 65-01-02(10). The ALJ explained Sandberg's work-induced pain no longer responded favorably to rest and treatment and prevented him from performing his lifelong occupation. However, the ALJ did not cite any medical evidence supported by objective medical findings in the record to support a determination that Sandberg's repetitive work activities did not merely trigger symptoms, but rather substantially worsened the severity of his degenerative condition.

[¶26] On this record, we are unable to reconcile the ALJ's decision with the statutory requirements for medical evidence supported by objective medical findings for a compensable injury in N.D.C.C. § 65-01-02(10). We reverse the judgment and remand to the ALJ for findings under those statutory requirements. Because of our resolution of the foregoing issue, we do not address WSI's argument that any finding in favor of Sandberg should be limited to an award based on aggravation under N.D.C.C. § 65-05-15.

IV

[¶27] We reverse the judgment and remand for proceedings consistent with this opinion.

[¶28]   Lisa Fair McEvers
        Daniel J. Crothers
        Jerod E. Tufte
        Jon J. Jensen
        Gerald W. VandeWalle, C.J.

13