# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

### 2021 ND 39

State of North Dakota, by and through
Workforce Safety and Insurance,                                    Appellant

  v.

John Sandberg                                                       Appellee

     and

Park Construction,                                                 Respondent

### No. 20200174

Appeal from the District Court of Ramsey County, Northeast Judicial District, the Honorable Donovan J. Foughty, Judge.

AFFIRMED IN PART AND REMANDED.

Opinion of the Court by McEvers, Justice.

Sean F. Marrin, Special Assistant Attorney General, Grand Forks, ND, for appellant.

Dean J. Haas, Bismarck, ND, for appellee.

## WSI v. Sandberg
## No. 20200174

**McEvers, Justice.**

[¶1]   Workforce Safety and Insurance ("WSI") appeals from a district court judgment affirming an ALJ's revised order on remand, entered after our decision in *State by & through Workforce Safety & Ins. v. Sandberg*, 2019 ND 198, ¶ 26, 931 N.W.2d 488 ("*Sandberg I*"). The ALJ's revised order made additional findings of fact and conclusions of law, and again found John Sandberg had sustained a compensable injury and is entitled to benefits. Under our deferential standard of review, we affirm in part; however, in light of the ALJ's revised order, we remand the case to WSI for further proceedings on whether benefits must be awarded on an aggravation basis and the proper calculation of those benefits under N.D.C.C. § 65-05-15.

I

[¶2]   Our decision in *Sandberg I*, 2019 ND 198, ¶¶ 2-10, sets forth the relevant facts and prior proceedings in this case, which we repeat here only to the extent necessary to decide this appeal after remand.

[¶3]   In July 2016, Sandberg filed a claim with WSI for a "[c]ervical (neck)" injury, identifying his last day of work with Park Construction on September 28, 2015, as the injury date, and describing how his injury occurred as follows:

> unloading and placing rock with excavator with continuous bouncing, slimming [sic], due to ruff [sic] terrain, with repetitive movement, arms and head continuous movement over long periods of time, arms at my side, hands running joysticks, head moving side to side, up and down, resulting in extreme neck, back and shoulder pain, with numbing in both arms and hands.

*Sandberg I*, 2019 ND 198, ¶ 6. In August 2016, WSI issued a notice of decision denying benefits for his claimed injury to his cervical (neck) and thoracic (middle back) spine that "occurred while working as a heavy equipment operator over time." Sandberg requested reconsideration.

[¶4] In its September 2016 order, WSI denied Sandberg's claim and his request for reconsideration. WSI determined "that his upper and middle back issues were a preexisting condition of degenerative disc disease and that his employment acted only as a trigger to produce symptoms in the preexisting condition and did not cause or increase the risk of his cervical degenerative disc disease." *Sandberg I*, 2019 ND 198, ¶ 7. "WSI determined Sandberg's work activities did not substantially accelerate the progression or substantially worsen his preexisting condition." *Id.* Sandberg requested an administrative hearing.

[¶5] In November 2017, a hearing was held before an independent ALJ. As we previously summarized:

> At the hearing, Sandberg relied on testimony and a letter from Dr. [Michael] Remmick and a letter from another treating physician, Dr. Steven Schoneberg, to support his claim that his repetitive work activities substantially accelerated the progression or substantially worsened the severity of his preexisting cervical and thoracic condition. Dr. Remmick testified there was more than just pain from a preexisting degenerative disc disease and there was an "accumulative trauma type effect" to Sandberg's soft tissues, supportive structures, and joint structures from his repetitive activities. Dr. Remmick testified there was a progression of significant physiological change in x-ray imaging from 2003 through the latest imaging. Dr. Schoneberg opined that Sandberg's work could have substantially contributed to the development and gradual worsening of his condition and likely contributed to his chronic neck and mid-back pain. WSI's medical consultant, Dr. Gregory Peterson, testified there was no significant clinical evidence demonstrating that Sandberg's work activities accelerated changes in his condition or that his condition was caused by his work activities. Dr. Peterson opined that Sandberg's work acted as a trigger to produce symptoms in his preexisting condition but did not cause or substantially accelerate the progression of his degenerative disc disease.

*Sandberg I*, 2019 ND 198, ¶ 9.

[¶6]  After the hearing, the ALJ issued a decision finding Dr. Peterson's opinion that Sandberg's work did not cause or substantially accelerate his condition was in conflict with Dr. Remmick's and Dr. Schoneberg's opinions and finding that Dr. Peterson's opinion was more persuasive. *Sandberg I*, 2019 ND 198, ¶ 10. The ALJ determined Sandberg's employment "did not cause or substantially accelerate the progression of his degenerative disc disease." *Id.* However, the ALJ also found Sandberg's employment "substantially increased the severity of his pain and did not merely trigger symptoms but substantially worsened the severity of his degenerative disc disease." The ALJ decided Sandberg had met his burden of proving he sustained a compensable injury. The district court affirmed the ALJ's decision.

[¶7]  Because the ALJ had made conflicting and insufficient findings to support the finding that Sandberg's claim was compensable, we were "unable to reconcile the ALJ's decision with the statutory requirements for medical evidence supported by objective medical findings for a compensable injury in N.D.C.C. § 65-01-02(10)." *Sandberg I*, 2019 ND 198, ¶¶ 25-26. We reversed and remanded to the ALJ for findings under the statutory requirements to decide whether Sandberg had sustained a compensable injury. *Id.* at ¶ 26.

[¶8]  On remand, the ALJ allowed the parties to submit further briefing and thereafter entered the ALJ's "Revised Findings of Fact, Conclusions of Law, and Order on Remand." In the revised order, the ALJ made additional findings and again held that Sandberg met his burden of proving by a preponderance of the evidence that he had sustained a compensable injury and that Sandberg's repetitive work activities did not merely trigger symptoms in a pre-existing condition, but rather "substantially contributed" to the development of "soft tissue injuries" in the cervical and thoracic areas of his back. WSI appealed to the district court, which affirmed the ALJ's order on remand.

II

[¶9] Courts exercise limited appellate review of a final order by an administrative agency under the Administrative Agencies Practice Act, N.D.C.C. ch. 28-32. *Sandberg I*, 2019 ND 198, ¶ 11; *see also Davenport v. Workforce Safety & Ins. Fund*, 2013 ND 118, ¶ 10, 833 N.W.2d 500; *Mickelson*

3

*N.D. Workforce Safety & Ins.*, 2012 ND 164, ¶ 7, 820 N.W.2d 333. Under N.D.C.C. §§ 28-32-46 and 28-32-49, the district court and this Court must affirm an administrative agency's order unless:

> 1. The order is not in accordance with the law.
> 2. The order is in violation of the constitutional rights of the appellant.
> 3. The provisions of this chapter have not been complied with in the proceedings before the agency.
> 4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.
> 7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.
> 8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28-32-46.

[¶10] In reviewing an agency's factual findings, a court may not make independent findings of fact or substitute its judgment for the agency's findings; rather, the court must decide only whether a reasoning mind reasonably could have determined the findings were proven by the weight of the evidence from the entire record. *Sandberg I*, 2019 ND 198, ¶ 12 (citing *Davenport*, 2013 ND 118, ¶ 11). Similar deference is given to the ALJ's factual findings when reviewing an appeal from an independent ALJ's final order "because the ALJ had the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve conflicts in the evidence." *Id*. An independent ALJ's legal conclusions, however, are fully reviewable on appeal, including interpretation of a statute. *Id*.

[¶11] Section 28-32-39(1), N.D.C.C., provides that an administrative agency "shall make and state concisely and explicitly its findings of fact." An agency's

findings are adequate when they enable a reviewing court to understand the agency's decision. *Sandberg I*, 2019 ND 198, ¶ 12 (citing *Pleinis v. N.D. Workers Comp. Bureau*, 472 N.W.2d 459, 462 (N.D. 1991); *F.O.E. Aerie 2337 v. N.D. Workers Comp. Bureau*, 464 N.W.2d 197, 199-200 (N.D. 1990)).

## III

[¶12] At the time relevant to this case, N.D.C.C. § 65-01-02(10) defined a "compensable injury" for purposes of workers' compensation law, stating in relevant part:

> "Compensable injury" means an injury by accident arising out of and in the course of hazardous employment which must be established by medical evidence supported by objective medical findings.
>
> . . . .
>
> b. The term does not include:
>
> . . . .
>
> (7) Injuries attributable to a pre-existing injury, disease, or other condition, including when the employment acts as a trigger to produce symptoms in the pre-existing injury, disease, or other condition unless the employment substantially accelerates its progression or substantially worsens its severity. *Pain is a symptom and may be considered in determining whether there is a substantial acceleration or substantial worsening of a pre-existing injury, disease, or other condition, but pain alone is not a substantial acceleration or a substantial worsening.*

(Emphasis added.)

[¶13] Claimants have the burden to prove by a preponderance of evidence that they have sustained a compensable injury and are entitled to workers' compensation benefits. N.D.C.C. § 65-01-11; *Bergum v. N.D. Workforce Safety & Ins.*, 2009 ND 52, ¶ 11, 764 N.W.2d 178. A claimant must prove that the condition for which benefits are sought is "causally related" to a work injury. *Bergum*, at ¶ 11. To establish a "causal connection," a claimant must demonstrate the claimant's employment was a substantial contributing factor

5

to the injury and need not show employment was the sole cause of the injury. *Bruder v. N.D. Workforce Safety & Ins. Fund*, 2009 ND 23, ¶ 8, 761 N.W.2d 588.

[¶14] In *Sandberg I*, we explained that the issue on appeal involved "the continuing efforts to apply the statutory delineation between work activities that merely trigger pain symptoms in a preexisting injury, disease, or other condition and are not compensable and work activities that substantially accelerate the progression or substantially worsen the severity of a preexisting injury, disease, or other condition and are compensable." 2019 ND 198, ¶ 16 (citing *Parsons v. Workforce Safety & Ins. Fund*, 2013 ND 235, ¶¶ 14-22, 841 N.W.2d 404; *Davenport*, 2013 ND 118, ¶¶ 20-29; *Mickelson*, 2012 ND 164, ¶¶ 9-23; *Johnson v. N.D. Workforce Safety & Ins. Fund*, 2012 ND 87, ¶¶ 7-10, 816 N.W.2d 74; *Curran v. N.D. Workforce Safety & Ins.*, 2010 ND 227, ¶¶ 18-28, 791 N.W.2d 622). We specifically discussed our decisions in *Davenport* and *Mickelson*, and the 2013 amendment to N.D.C.C. § 65-01-02(10)(b)(7), concluding:

> The plain language of the 2013 amendment to N.D.C.C. § 65-01-02(10)(b)(7) is consistent with *Mickelson* and *Davenport*, and clarifies that pain is a symptom of a preexisting injury, disease, or other condition and may be considered in determining whether there is a substantial acceleration of the progression or a substantial worsening of the severity of the condition, but pain alone is not a substantial acceleration or a substantial worsening. Moreover, the 2013 amendment did not alter the requirement in N.D.C.C. § 65-01-02(10), that a compensable injury must be established by medical evidence supported by objective medical findings.

*Sandberg I*, at ¶ 23.

[¶15] "[O]bjective medical findings may include a physician's medical opinion based on an examination, a patient's medical history, and the physician's education and experience." *Sandberg I*, 2019 ND 198, ¶ 23 (citing *Swenson v. Workforce Safety & Ins. Fund*, 2007 ND 149, ¶ 25, 738 N.W.2d 892).

IV

[¶16] WSI argues that the ALJ again erred in reversing WSI's September 2016 order denying Sandberg's claim, misapplied the law on remand, and exceeded the scope of *Sandberg I*'s mandate in determining that Sandberg sustained a compensable injury.

A

[¶17] WSI argues on appeal that the ALJ essentially manufactured a medical condition by finding Sandberg had sustained a "soft tissue injury" and the issues to be decided on remand do not reference or mention a "soft tissue injury." WSI argues the ALJ created new issues on remand to find a compensable injury, defeating the purpose of specifying issues. WSI contends the ALJ disregarded this Court's prior opinion by improperly relying on Sandberg's subjective pain complaints for a second time to manufacture an allegedly compensable soft tissue injury.

[¶18] In *Sandberg I*, 2019 ND 198, ¶¶ 25-26, this Court concluded that the ALJ had made conflicting and insufficient findings of fact to support the ALJ's finding that Sandberg's claim was compensable and, as a result, we were "unable to reconcile the ALJ's decision with the statutory requirements for medical evidence supported by objective medical findings for a compensable injury in N.D.C.C. § 65-01-02(10)." We reversed and remanded to the ALJ for findings under those statutory requirements. *Id.* at ¶ 26.

[¶19] Generally, "[a]n appellate reversal vacates the judgment so that the parties are placed in the same position as before entry of the judgment." *Morales v. State*, 2020 ND 117, ¶ 4, 943 N.W.2d 761 (quoting *Mahoney v. Mahoney*, 1997 ND 149, ¶ 36, 567 N.W.2d 206); *see also Bergstrom v. Bergstrom*, 320 N.W.2d 119, 122 (N.D. 1982) ("Dependent orders and proceedings fall with the reversal of the judgment."). We have discussed proper application of the law-of-the-case doctrine and mandate rule when a case involves a second appeal:

> [T]he law of the case is defined as the principle that if an appellate court has passed on a legal question and remanded the cause to

the court below for further proceedings, the legal question thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same. In other words, [t]he law of the case doctrine applies when an appellate court has decided a legal question and remanded to the district court for further proceedings, and [a] party cannot on a second appeal relitigate issues which were resolved by the Court in the first appeal *or which would have been resolved had they been properly presented in the first appeal*. The mandate rule, a more specific application of law of the case, requires the trial court to follow pronouncements of an appellate court on legal issues in subsequent proceedings of the case and to carry the [appellate court's] mandate into effect according to its terms. . . . and we retain the authority to decide whether the district court scrupulously and fully carried out our mandate's terms.

*Carlson v. Workforce Safety & Ins.*, 2012 ND 203, ¶ 16, 821 N.W.2d 760 (citations and quotation marks omitted); *see also Glass v. Glass*, 2018 ND 14, ¶ 5, 906 N.W.2d 81 ("The law of the case doctrine is based upon the theory of res judicata, and is grounded on judicial economy to prevent piecemeal and unnecessary appeals." (citation omitted)). For example, in *Carlson*, at ¶¶ 17-19, this Court held that WSI's exercise of its continuing jurisdiction on remand was beyond the scope of our remand in the first appeal. We had decided a legal question in the first appeal, holding that the employer failed to file a timely and sufficient request for reconsideration under the relevant statute and that WSI's notice of decision regarding the claimant's employment status was final and could not be reheard or appealed. *Id.* at ¶ 17. We remanded only for further proceedings on calculation of the claimant's average weekly wage. *Id.* at ¶ 18. On remand, however, WSI exercised its continuing jurisdiction and held further proceedings re-adjudicating the claimant's employment status that "were in effect a 'do-over' of the proceedings leading" to the first appeal. *Id.* at ¶ 18. We therefore held that, under the law-of-the-case doctrine, WSI was precluded from using its continuing jurisdiction to re-adjudicate the claimant's employment status. *Id.* at ¶ 19. The present case is unlike the proceedings in *Carlson*.

8

[¶20] Here, in the ALJ's revised order, the ALJ on remand did not go beyond the scope of our mandate in *Sandberg I* after this Court reversed and remanded. In *Sandberg I*, 2019 ND 198, ¶ 26, rather than deciding a legal question, we merely held that we were unable to reconcile the ALJ's prior decision "with the statutory requirements for medical evidence supported by objective medical findings for a compensable injury in N.D.C.C. § 65-01-02(10)." We reversed the judgment and remanded the case to the ALJ for findings under those statutory requirements. Our decision only required the ALJ to determine and make consistent, sufficient findings as to whether Sandberg had sustained a "compensable injury" under the statute. On remand the ALJ entered the revised order, which included additional specific findings on the medical evidence and determined Sandberg sustained a compensable injury. We conclude the issues decided by the ALJ on remand were necessarily included in the issues we sent back and, therefore, conclude the ALJ did not go beyond the terms of our mandate.

B

[¶21] In the ALJ's revised order, the ALJ again identified the same issues for resolution as whether Sandberg proved by a preponderance of evidence that his repetitive work activities: "(1) are a substantial contributing factor to his cervical and thoracic degenerative conditions, or (2) substantially accelerated or worsened his preexisting cervical spine and thoracic spine conditions." The ALJ once again found Dr. Peterson's opinion was persuasive in that the greater weight of the evidence did not establish that Sandberg's work caused or substantially accelerated the progression of his degenerative disc disease.

[¶22] The ALJ, however, made additional findings of fact on remand, specifically determining that a preponderance of the evidence had also established that Sandberg's work activities "substantially contributed" to his development of "soft tissue injuries" and that his "soft tissue injuries" were not a pre-existing condition. The ALJ specifically found:

> 36.    A preponderance of the evidence does establish that the stresses placed upon Mr. Sandberg due to the jarring motion that he assumed and postured that he had to adopt while working

9

substantially contributed to his development of soft tissue injuries that contributed to his debilitating pain. This was the opinion of Dr. Remmick, which was credible, supported by the opinion of Dr. Schoneberg, and was not refuted by Dr. Peterson, who focused his testimony on Mr. Sandberg's degenerative disc condition, not upon soft tissue injury. To the extent that Dr. Peterson addressed soft tissue injury in a very general sense, his testimony was in accord with Dr. Remmick's opinion. Although he vaguely purported to disagree with Dr. Remmick's opinion on Mr. Sandberg's soft tissue injuries, Dr. Peterson did not elaborate on why he disagreed, and admitted ". . . mechanical stresses can have a physical effect, I think that on—you know, that one is easy to agree with." Tr. 117

37.     If it could be said that there is a medical disagreement between Dr. Peterson and Dr. Remmick regarding soft tissue injury, the factors of N.D.C.C. § 65-05-08.3 favor the opinion of Dr. Remmick. Having had the benefit of hearing both testify, it is clear that Dr. Peterson focused on the visual evidence of Mr. Sandberg's degenerative disc disease almost exclusively, while Dr. Remmick focused on the condition of Mr. Sandberg's back as a whole. Dr. Remmick's opinion is persuasive, and its value is not diminished by the fact that he did not discuss in detail the issue of causation in his treatment records.

38.     Mr. Sandberg's soft tissue injuries were not a pre-existing condition.

39.     A preponderance of the evidence does not establish that Mr. Sandberg's herniated disc is a source of his pain.

40.     A preponderance of the evidence does establish that operating the track hoe moving rip rap was a substantial contributing factor in the development of Mr. Sandberg's debilitating back coondition [sic]. Prior to 2015, the pain lessened after rest during seasonal layoff and chiropractic treatment. Following, and as a result of a period of pushing rip rap year round, in 2015 Mr. Sandberg's work induced pain became worse and no longer responded favorably to rest and treatment.

41.     This case presents a trap in which the unwary, including this ALJ, can easily fall. Because it is true that a picture is worth a thousand words, when looking for objective medical evidence of a condition, we favor visual representations such as provided by x-rays and MRIs. Here, there was visual medical evidence of degenerative disc disease and herniation. Once that was found, it became the focal point, and the inquiry became

whether the visual evidence demonstrated that Mr. Sandberg's degenerative disc disease had worsened over time. In the discussion, especially by Dr. Peterson, degenerative disc disease was treated as synonymous with Mr. Sandberg's back condition. The issue should not have been viewed so narrowly. The question is not merely whether the degree to and rate at which Mr. Sandberg's disc degeneration had progressed was accelerated by his work. His condition involves the pain and loss of function in his cervical and thoracic areas, not merely what appears on x-rays and MRIs. As Dr. Peterson testified, there is little correlation between the degree of disc degeneration as reflected visually in radiographic results and the pain that it produces in any particular patient.

42. A preponderance of the evidence establishes that Mr. Sandberg's work did not merely trigger symptoms of a pre-existing condition, but in a real, true, important, and essential way made Mr. Sandberg's back condition more unfavorable, difficult, unpleasant, and painful. Mr. Sandberg provided credible testimony that the jarring and twisting that he endured daily resulted in the pain and loss of function that caused him to seek chiropractic and medical treatment. That treatment provided relief for a time, and he continued to engage in the same work, only stopping when he took what would have been a seasonal layoff anyway when that treatment no longer provided the relief that it once had.

43. A preponderance of the evidence establishes that Mr. Sandberg's employment substantially contributed to the debilitating effects of his cervical and thoracic spine condition, *which is a combination of degenerative disc disease and soft tissue injuries caused by his work conditions*, and has caused him to seek considerable medical treatment and ultimately prevented him from performing his lifelong occupation.

(Emphasis added.)

[¶23] The ALJ concluded that Sandberg met his burden to prove he sustained a compensable injury, "in that he ha[d] proven by a preponderance of the evidence that his repetitive work activities did not merely trigger symptoms in a preexisting condition, but rather substantially contributed to his

11

development of soft tissue injuries in the cervical and thoracic areas of his back."

[¶24] WSI argues that the ALJ improperly relied on Sandberg's subjective pain complaints and failed to provide "objective medical findings" of a medical condition, other than pain, in support of his conclusion. WSI contends it is unclear how the ALJ can disregard WSI's medical expert Dr. Peterson's opinion, as the "more qualified expert," but yet rely on Sandberg's "questionable" medical opinion evidence from Dr. Schoneberg and his chiropractor Dr. Remmick. WSI further characterizes Dr. Remmick's opinion as "less authoritative." WSI contends the ALJ improperly shifted the burden of proof to WSI to disprove Sandberg suffered a compensable injury. WSI essentially asserts the ALJ failed to perform a full analysis of the factors under N.D.C.C. § 65-05-08.3 when it gave more weight to Dr. Remmick's opinion with regard to soft tissue injury. WSI argues the ALJ erred in finding that he sustained a compensable "soft tissue injury" and that his "soft tissue injuries" were not a pre-existing condition.

[¶25] Sandberg responds that the ALJ's revised order reasonably resolved a fact question that may not be overturned on appeal and that the overwhelming weight of the medical records support the ALJ's findings. He asserts that WSI is engaging in gamesmanship and wordplay over a fair evaluation of the effect of his work on the actual clinical significance of the repetitive injury to his spine. He contends this Court has never held that the exclusive criteria by which to find a compensable worsening is based merely on a comparison of radiographs. Sandberg further asserts that, in accord with the ALJ's finding, his doctors have recognized that his employment "in a real, true, important way made his preexisting condition significantly worse; it caused him to have pain, muscle spasm, trigger points, loss of motion and function that necessitated medical attention and caused disability."

[¶26] The ALJ's revised order on remand determined that Sandberg had sustained a compensable injury because his work activities substantially contributed to his development of soft tissue injuries and that the soft tissue injuries were not a pre-existing condition. The ALJ made specific findings

12

regarding the ALJ's consideration of the evidence presented at the hearing, weighed the doctors' competing opinions, and concluded the medical evidence supported by objective medical findings established a compensable injury. On appeal we decide only whether a reasoning mind reasonably could have determined the ALJ's findings were proven by the weight of the evidence from the entire record. Because the ALJ had the opportunity to observe witnesses and the responsibility to assess the credibility of witnesses and resolve the conflicts in the evidence, we also will not reweigh the evidence or substitute our judgment for the ALJ's decision.

[¶27] On this record, we affirm the ALJ's revised order entered on remand, insofar as it found that Sandberg had sustained a compensable injury and is entitled to benefits. As will be discussed, however, we do not decide whether those benefits should be paid on an aggravation basis, as provided under N.D.C.C. § 65-05-15.

V

[¶28] WSI argues that the ALJ disregarded North Dakota's legal requirement that a finding of a compensable injury in favor of Sandberg should be limited to an aggravation basis under N.D.C.C. § 65-05-15. WSI argues that if this Court affirms the ALJ and the district court on remand, Sandberg is only entitled to benefits on an aggravation basis.

[¶29] Section 65-05-15, N.D.C.C., addresses whether and how to calculate benefits payable on an aggravation basis:

> When a compensable injury combines with a noncompensable injury, disease, or other condition, the organization shall award benefits on an aggravation basis, on the following terms:
>> 1. In cases of a prior injury, disease, or other condition, known in advance of the work injury, which has caused previous work restriction or interference with physical function the progression of which is substantially accelerated by, or the severity of which is substantially worsened by, a compensable injury, the organization shall pay benefits during the period of acute care in full. The period of acute care is presumed to be sixty days

13

immediately following the compensable injury, absent clear and convincing evidence to the contrary. Following the period of acute care, the organization shall pay benefits on an aggravation basis.

2. If the progression of a prior compensable injury is substantially accelerated by, or the severity of the compensable injury is substantially worsened by a noncompensable injury, disease, or other condition, the organization shall pay benefits on an aggravation basis.

3. The organization shall pay benefits on an aggravation basis as a percentage of the benefits to which the injured worker would otherwise be entitled, equal to the percentage of cause of the resulting condition that is attributable to the compensable injury. Benefits payable on an aggravation basis are presumed to be payable on a fifty percent basis. The party asserting a percentage other than the presumed fifty percent may rebut the presumption with clear and convincing evidence to the contrary.

4. When an injured worker is entitled to benefits on an aggravation basis, the organization shall still pay costs of vocational rehabilitation, burial expenses under section 65-05-26, travel, other personal reimbursement for seeking and obtaining medical care under section 65-05-28, and dependency allowance on a one hundred percent basis.

[¶30] Sandberg asserts that WSI waived the application of the aggravation statute and related arguments because it was not included in the specification of issue agreed to by the parties that governed the ALJ's decision. He further contends that the aggravation statute does not apply.

[¶31] In *Sandberg I*, 2019 ND 198, ¶ 26, we specifically did not address WSI's argument that any finding in favor of Sandberg should be limited to an award based on aggravation under N.D.C.C. § 65-05-15, because we reversed the judgment and, by extension, the ALJ's initial order. We remanded to the ALJ for consistent, sufficient findings on whether Sandberg sustained a compensable injury. As discussed, the issues decided by the ALJ on remand were necessarily included in the issues we sent back and the ALJ did not go beyond our mandate's terms. Likewise, we did not preclude consideration of, or decide that WSI had waived, application of the aggravation statute. Because

14

the ALJ could have found on remand Sandberg did not sustain a compensable injury, any discussion of N.D.C.C. § 65-05-15 would have been unnecessary to our decision and potentially dicta.

[¶32] Since WSI's September 2016 order denying Sandberg's claim for benefits, which the ALJ has now reversed twice, WSI has consistently taken the position that Sandberg was not entitled to benefits for his claimed injuries. WSI has therefore not addressed any calculation of benefits on an aggravation basis under N.D.C.C. § 65-05-15. Moreover, the ALJ's revised order has specifically found that "Sandberg's employment substantially contributed to the debilitating effects of his cervical and thoracic spine condition, *which is a combination of degenerative disc disease and soft tissue injuries caused by his work conditions*, and has caused him to seek considerable medical treatment and ultimately prevented him from performing his lifelong occupation." (Emphasis added.)

[¶33] While failure to include an issue in the subsequent specification of errors may waive that issue, *see Beam v. N.D. Workforce Safety & Ins. Fund*, 2020 ND 168, ¶ 7, 946 N.W.2d 486, WSI has continued to argue this issue after this Court's reversal and remand in *Sandberg I*. WSI also included this argument in its specification of errors to the district court and again in the present appeal to this Court.

[¶34] Because the ALJ determined that Sandberg has sustained a compensable injury and Sandberg's compensable injury may "combine[] with a noncompensable injury, disease, or other condition," as contemplated under N.D.C.C. § 65-05-15, we remand this case to WSI to determine whether N.D.C.C. § 65-05-15 applies and, if so, the proper calculation for an award of benefits to Sandberg.

VI

[¶35] We have considered the parties' remaining arguments and conclude they are either without merit or unnecessary to our decision. We affirm the judgment affirming the ALJ's revised order to the extent the order found Sandberg sustained a compensable injury; however, we remand the case to

15

WSI for further proceedings on whether benefits must be awarded on an aggravation basis under N.D.C.C. § 65-05-15.

[¶36] Jon J. Jensen, C.J.
      Gerald W. VandeWalle
      Daniel J. Crothers
      Lisa Fair McEvers
      Jerod E. Tufte